(*) Philbrook *versus* New England Mutual Fire Insurance Company.

The application to an insurance company, upon which a policy is granted, is to be taken as a part of the contract of insurance, to the same effect as if incorporated into the policy itself.

The charter of a mutual insurance company provided that a person insured therein, should be deemed a member, during the time specified in his policy, and that he should be "bound to pay his proportion of all losses and expenses happening to the company, *during his connection therewith;* — Held, that the collection of an assessment, ordered by the company within the life of the policy, but subsequent to the destruction of the property by fire, is not a waiver of any forfeiture of the policy previously incurred by the act of the insured himself.

If, by law, a policy is to be vacated by a subsequently acquired insurance, unassented to by the first insurers, yet if the second policy be a void one, it will not defeat the former one, even though the subsequent insurers, after a loss by fire, may have paid the amount which they insured.

In the construction of written contracts, it is competent to take into consideration the subject matter, and the obvious scope and design, and even the situation of the contracting parties.

Though a by-law of an insurance company may provide that any of its policies upon property *previously insured*, shall be void, unless such previous insurance be indorsed on the policy at the time of its being issued; still such by-law is inoperative, if, *in the policy itself*, such previous insurance be recognized and approved.

A policy was issued upon property on which a previous policy had been issued by other insurers, but both the sums insured did not exceed three fourths in value of the property; — Held, that such a by-law as above named would not vacate the last issued policy, which within itself gave to the insured, "leave to keep insured, upon the same property, in other companies, an additional sum, provided both sums insured should not exceed, in value, three-fourths of the property insured."

On Report from *Nisi Prius*, Wells, J., presiding.

Assumpsit upon a policy of insurance against fire. After the evidence had all been presented, the case was submitted to the Court, with power to draw inferences of fact, and to enter judgment of nonsuit or default, as the principles of law may require.

By the consideration of the Court, the evidence established the following facts: —

The defendants are a corporation established by a statute of the State of New Hampshire.

Moses Emery owned a hotel in Saco, called the Thornton House. An L part and a hall either constituted a part of the hotel, or were contiguous to it, and owned with it.

On October 8, 1849, he procured of the defendants an insurance against fire, of $2000, for three years, upon "his tavern house."

In his application, he described the "buildings" to be "three stories, with an entablature of one more story in the main house; ell and hall, three stories," and valued at $12000.

On Jan. 26, 1850, Emery conveyed the property to this plaintiff, Philbrook, and assigned to him the policy. To that assignment, the defendants in due form assented.

Afterwards, on March 4, 1850, Philbrook made application to the Lowell Traders' and Mechanics' Mutual Fire Insurance Company, for an insurance to the amount of $3200, for three years, upon "hotel and hall attached," valued at $10,000. In that application, he stipulated that the $3200 did not exceed three quarters of the actual value of the buildings, exclusive of land.

Conformably to that application, the Lowell company, on the same day, issued to him their policy of insurance.

Some provisions, contained in the respective charters and by-laws of these two companies, and bearing upon the rights of these parties, are presented in the opinion of the Court.

On January 9, 1851, the "house" was wholly destroyed by fire. On the 20th of same January, the plaintiff, by certificate of E. R. Wiggin, the nearest magistrate, gave due notice to the defendants of the loss, and of the amount of insurances therein, particularly specifying that made by the Lowell Company.

On March 5, 1851, the defendants notified the plaintiff that they rejected his claim against them on their policy.

On April 22, 1851, the Lowell company paid to the plaintiff $3200, being the amount by them insured.

On July 23, 1851, the plaintiff paid to the defendants' treasurer $19,20, taking his receipt therefor, certifying that it was an assessment ordered by the directors on April 1, 1851.

Philbrook *v.* New England Mut. Fire Ins. Co.

The defendants insist that they are under no liability to the plaintiff, and they rely upon the ground that, subsequent to the time of their contract of insurance, and of the assignment of it to the plaintiff, he obtained the additional insurance at the Lowell office, without having procured the assent of the defendants thereto, or notified them of it.

*Eastman* and *Leland*, for the plaintiff.

*Clifford*, for the defendants.

TENNEY, J. — The defendants do not deny, that a *prima facie* case has been made out against them, by their policy to Moses Emery and the assignment thereof to the plaintiff and the loss of the property, together with the preliminary proofs required by the Act of incorporation and by-laws, which make a part of the policy. But they do deny their liability, on the ground, that subsequent to their contract of insurance, and the assignment of the same, the plaintiff obtained at the office of the "Lowell Traders' and Mechanics' Mutual Fire Insurance Company," duly incorporated and organized, an insurance of the same property, and failed to give notice, and obtain the consent of the directors of the defendants, according to the provision contained in section 12 of their Act of incorporation, which is in the following language; — "If any other insurance shall be obtained on any property insured by this company, notice shall be given to the secretary, and the consent of the directors obtained; otherwise the policy issued by the company shall be void."

It is admitted by the plaintiff, that he did obtain a policy at the office of the Lowell company, on March 4, 1850, but insists that the policy in suit is not affected by the provision in the section of the Act of incorporation referred to, for the following reasons; first, the risks assumed by the two companies were not identical. Second, the rights of the defendants, whatever they might otherwise have been, under this section, were waived by the directors. Third, that the notice of January 20, 1851, was a sufficient notice of the subsequent policy. Fourth, the policy of the Lowell

company was void, when it issued, and could have no operation to the prejudice of the plaintiff.

1. The application of Emery, made on October 8, 1849, to the defendants, is for insurance on the "Thornton House," to the amount of $2000, valued at $13000. The second question in the application, to be answered is, "materials and condition of the buildings." This question must refer to the building or buildings before mentioned, on which insurance was sought. No building is previously referred to in the application, excepting the "Thornton House." The answer is, "three stories, with an entablature of one more story in the main house, ell and hall, three stories." It is manifest that the intention of the applicant was to obtain insurance on the main house, the ell and the hall, under the general term of the "Thornton House." The evidence introduced to exhibit the relative situation of the main house, the ell and the hall, and the manner of their connection one with the other, shows very clearly, that all may be considered as parts of the same house. In the application, in answer to the sixth question, "how are the buildings occupied?" Emery says, "rented to James P. Philbrook, late of the Franklin House, Augusta, Me. for a tavern." The policy obtained upon this application, is of his "Tavern House, $2000, situate as described in his application, reference being had to said application, for a more particular description, and as forming a part of this policy." The application is to be taken as a part of the contract of insurance, in the same manner it would be, if incorporated into the policy itself.

The plaintiff's application to the Lowell company, of March 4, 1850, is for insurance upon the hotel and hall attached, of $3200, of the value of $10,000, in Saco, on Main street." A policy of insurance of the same property was obtained on that day. Nothing tends to show that the plaintiff did not consider the ell as a part of the "Hotel," and from the imperfect description given of the ell in the evidence, we do not doubt, that it is proper so to regard it.

The hall, whether a part of the "Hotel" or not, in fact is covered by the policy in express terms. The plaintiff's receipt of money after the loss, dated April 22, 1851, of the Lowell company, is in full for his loss by fire of the "Thornton House, at Saco." The property insured by one policy, is covered by the other.

2 and 3. If the second and third answers to the defence are understood by the Court, they may be considered in connection. In order that the policy in suit may not be void, by § 12, of the Act of incorporation, by a subsequent policy it is made necessary that notice thereof be given to the secretary, and the consent of the directors obtained. The consent of the directors to the second insurance, is the object of the notice, which is not required to be in any particular form, or in writing. It is for the purpose of obtaining the consent, which becomes entirely effectual, however defective the notice may be, if it be obtained. But if the consent is not obtained in express terms, but in such a mode, that of itself it may be of doubtful import, the notice shown to have been given may serve to explain it and give it a character free from doubt.

It is contended by the plaintiff, that the required notice was given on January 20, 1851, in the certificate of E. R. Wiggin, as a magistrate, containing the statement of the plaintiff, that there was such second insurance. It is true, as the plaintiff contends, that he was not bound by the aforenamed section 12 to give the notice at any precise time; but the policy of the defendants was suspended, after the second was obtained, if the latter was valid, until the notice to, and the consent of the directors, so that it would not cover a loss happening during that time.

By § 7 of the Act of incorporation of the defendants, persons sustaining a loss of property insured, shall within thirty days thereafter, give notice of the same in writing at the office of the company. And by article 11, of the by-laws, as soon after the loss as practicable the assured shall furnish the office with a particular account of such loss or damage,

verified by oath, and with other things, state whether any, or what other insurance existed on the same property, accompanied by a certificate under the hand of some disinterested magistrate, &c.

The notice of January 20, 1851, contains many things not required, if the purpose thereof was to obtain the consent of the directors to the second insurance; such as the account of the loss; knowledge or want of knowledge of the cause of the fire; value of the property on which insurance was obtained; the tenure by which the plaintiff claimed it; the dimensions of the buildings, all verified by oath, and accompanied by the certificate of a magistrate most contiguous to the place of the fire.

On the other hand, some things are omitted apparently essential in a notice designed to obtain the consent of the directors to a second insurance; the dates of the policies were not given in this notice; and nothing is found therein from which it can be inferred, that the insurance in the Lowell company was subsequent to the other; no request for consent is expressed or intimated, and nothing from which it would be understood that it was desired. It is, therefore, difficult to come to the conclusion that this paper, with the magistrate's certificate, so appropriate as a compliance with § 7, of the Act, and of article 11, of the by-laws, and purporting upon its face to be in pursuance of the requirements therein, and so totally inappropriate for any other purpose, given eleven days after the fire, and more than ten months after the second policy was taken, can be treated as designed at all for a notice under § 12. It bears no evidence of such intention, and of itself is insufficient for that purpose. There is no evidence of any other notice, unless it may be found by inference, from the conduct of the directors, relied upon by the plaintiff as proof of a waiver of the right to hold their policy void.

On March 5, 1851, the plaintiff was informed by the letter of the secretary of the defendants, that his claim was rejected by the directors. This letter must be construed to

mean all that its terms indicate and no more, in connection with the plaintiff's notice of January 20, 1851, and is a substantial denial of that liability of the company; and being so, acts more unequivocal, than might otherwise be required, may be regarded as necessary to show that the directors intended to waive the right of the company, asserted thereby, to hold the policy invalid.

For the purpose of showing the waiver of the defendants, the plaintiff relies upon the receipt of the treasurer of the company, in the following terms:—" New England Mutual Fire Insurance Company. Received of J. P. Philbrook, nineteen dollars and twenty cents, being the amount of the assessments ordered by the directors of the New England Mutual Fire Insurance Company, April 1, 1851, on premium note 6513. " Jno. Whipple, Treasurer.

" Concord, July 23, 1851. By the hand of G. White."

Upon the back of this receipt was printed a schedule of losses, from May 16, 1850, to March 29, 1851, inclusive.

It is insisted for the plaintiff, that the defendants cannot hold their policy void, and receive the benefit of his premium note. Hence this assessment and the receipt thereof from him by the proper officer of the company, is a consent to the second policy, and is a waiver of the right to hold the one in suit vacated. Is this proposition true ? No authorities, which we consider bearing directly upon it, and in its support, have been referred to ; and its correctness must be determined upon an examination of the whole contract.

By section 2 of the charter of the defendants, persons, who may at any time become insured under this Act, shall be deemed and be taken to be members of this corporation, during the time specified in the policy. By § 6, every member is bound to pay his proportion of all losses and expenses happening to the company during his connection therewith; and the buildings insured, with the land whereon they stand, are held as security of any deposit note of the person so insured, and the policy itself enacts a lien upon the same, for the sum of any such deposit note, and the

costs which may accrue in collecting the same; and such lien shall continue during the existence of said policy. No provisions in the Act of incorporation exonerate a member from his obligations; or put an end to his connection with the company by a rejection of his claim for a loss, which may occur; neither does it provide, that when a policy is made void, by the holder's voluntary act, he is excused from the payment of assessments made afterwards. If it were so, it would be in the power of the party assured, to relieve himself of his obligations at pleasure, if he should choose to give up the benefit of his insurance by conduct of his own. The most satisfactory reasons may exist for a rejection of a claim by the directors. § 1, of the Act, refers to such; and is it to be supposed, that by the refusal to pay for a loss, not covered by the policy, the premium note of the person, who sustained the loss, is thereby canceled?

After the plaintiff's loss had occurred, if he had given sufficient notice thereof, with a request, that the directors would consent to the second insurance, when the policy was void by the voluntary act of the plaintiff, and they had given their consent, it would have been strongly indicative of bad faith in them to the company. This we are not at liberty to presume; and it cannot be regarded as true without convincing proof.

The directors can do no act in violation of the express provisions of the charter. Those provisions are for the protection of the company, and the members of it, and their interests cannot be wantonly abandoned. It was evidently contemplated, that when an insurance should be made by the defendants for an amount not exceeding two-thirds of the estimated value of the property insured, that it would be important to them that the assured should not obtain insurance in other companies *ad libitum*, and thereby essentially increase their risk and diminish their security. It is most manifest that the restriction upon the members of the company, as to subsequent insurances, contained in § 12, had reference to the risks made by the company, while they con-

tinued in existence. The construction, that the directors had the power to give their consent, by a direct and positive vote, after the holder of the policy had omitted to notify them thereof, and request their consent, and after the entire property covered by the policy had been destroyed, cannot be admitted. By the loss of the whole property insured the risk was terminated; and if, at that time, no consent to a second policy had been given, the policy was void; and a consent would then be gratuitous to the assured, equally as it would be, by a voluntary agreement without consideration, to pay the loss by fire of property, on which no insurance had been attempted. Consequently a consent cannot be inferred from acts of the directors, so as to be binding upon the company, however unequivocal they may be in their character. A waiver, in such a case, is quite unlike a waiver of strict compliance with the charter and by-laws in certain preliminary steps, in order to make a valid policy available. Here the foundation of the claim is an insurance followed by a loss, and the defence is upon the ground that the insurance ceased utterly before the loss, and consequently, if it be so, the claim is baseless. *Heath & al.* v. *Franklin Insurance Company,* 1 Cush. 257. The evidence in this case fails to satisfy us that the directors designed to exercise the power, not possesed by them, and gave their consent to a second insurance; or that they did any thing which gave validity to a policy which had become void by the plaintiff's acts and omissions.

4. The authorities cited for the plaintiff fully establish the proposition, that a second policy, which is void, does not vacate the first, under such provisions as those contained in § 12, of the Act of incorporation. And the fact, that the company who issued the second policy paid the amount insured, is of no consequence in the question here involved, if the payment was made upon a policy clearly void. Various considerations may have had an influence in inducing the payment of the claim. The view most favorable for the defendants is, if it is a doubtful question of construction,

whether the second policy was void or not, that the party which made the policy and was interested to hold it void, have treated it as binding upon them. But whether valid or not, it must be settled by its terms, and the charter and the by-laws, referred to therein, as making a part of the policy. It is sometimes the case that a difficulty is found in ascertaining the meaning of the parties to a written instrument. "Resort must be had in such cases, to the obvious scope and design of the parties, and to the subject matter to which it has reference, and even to the situation of the parties contracting." *Cummings* v. *Dennett*, 26 Maine, 397.

In article 13, of the by-laws of the Lowell Traders' and Mechanics' Mutual Fire Insurance Company, it is provided that all policies which may issue from this company, to cover property previously insured, shall be void, unless such previous insurance be indorsed on the policy at the time that it issues; and when a subsequent insurance shall be made by another company, or by any person, on property insured at this office, it shall annul the policy, and the premium be forfeited to this company, unless such double insurance subsist, with the consent of the directors indorsed upon the policy.

So far as this article has reference to a previous insurance in another company, it imports that to make the policy effectual, the approval of the directors shall appear thereon, at the time it shall issue. This was intended only as evidence of their consent. As no particular form of words are made necessary, and no requirement that it shall be stated, at what office the insurance was obtained, or the amount covered by the policy, it is not perceived that an express approval and consent in the policy is not as perfect a compliance with this part of the by-law, as that which it was supposed would be necessarily implied from the simple statement of the insurance upon the instrument.

In *Liscom* v. *Boston Mutual Fire Insurance Company*, 9 Met. 205, it was provided in its by-laws, that "all policies which may issue from this company, to cover property pre-

Philbrook *v.* New England Mut. Fire Ins. Co.

viously insured, shall be void, unless such previous insurance be expressed in the policy at the time it issues." And the Court say, "the great object of the provision is to guard against fraud, by preventing insurances on property greatly above its value." "The Legislature were sensible of this exposure,"—"and they therefore prescribed, among other regulations for the government of mutual fire insurance companies,"—"that they might insure upon any buildings within this State, any amount not exceeding three-fourths of the value thereof. The object of the by-law above recited, is to give efficiency to this provision of the statute, by securing a timely notice of the existence of a previous insurance, if any, and thus to prevent the assuming of risks on property beyond three-fourths of its value." The directors of the Lowell company seem to have believed such to have been the design of the thirteenth article of the by-laws referred to, when in their policy to the plaintiff, which was recorded on the books of the company, they give. "leave to keep insured on same in other companies, an additional sum, provided the amount insured being not more than three-fourths of the value of said buildings."

The policy from the Lowell company was made March 4, 1850, and continued for the term of three years. The defendants' policy was dated October 8, 1849, and was for the same term of time from its date; consequently the latter had two years and more than seven months to run, when the former was made. It may be supposed important for the plaintiff, that he should have the benefit of the policy already obtained, rather than be at the expense of procuring a new one for the same amount, for the whole time. On the other hand, it would be quite immaterial to the company, whether the former policy should remain effectual, or a new one for the same sum and for the same time should be obtained. Hence when we see the general leave granted, as disclosed by the policy, it is in the highest degree probable, aside from the construction of the particular terms used, that the former insurance was disclosed; and

the leave of the directors is given, that other insurances may exist upon the property, with the restriction only, that the whole sum insured shall not exceed three-fourths of the value of the property. No question is made that the sums covered by the two policies did exceed that proportion; and the whole evidence shows that they fell far below it. If the previous insurance had been indorsed on the policy at the time of its execution, it could have been evidence no more satisfactory, of a *willingness* on the part of the directors, that it should continue, than now appears from the permission granted. Every fact therefore, which could operate to satisfy them, that an indorsement of the previous insurance would have been proper, and if requested in that form, would have been made by them, is fully shown.

The terms in the policy, by which other insurances are allowed, does not limit the plaintiff to future insurances; it is permitted that others may subsist; and certainly those made previously, then in existence, are embraced in the consent which is expressed.

But it is believed that by the application of the strictest rules of construction to the language used, the previous insurance is substantially stated on the face of the policy. Something more was evidently intended, than permission to obtain insurances afterwards in other companies; for if such was the extent of the design, it could have been left to be " *indorsed upon the policy,*" when done, according to the provision of the same article; or the consent could have been expressed in the policy in the shortest and most precise language; and the use of the terms to *keep insured,* would be immaterial, inasmuch as the leave for future policies was limited only by the gross amount of three-fourths of the value.

But as the interest of the plaintiff was to retain the benefit of his previous insurance, and to have permission at the expiration thereof, to have the right of a renewal, or procure insurance from another company, it is manifest that the intention of the parties was, that this should be secured to him. The meaning of the word *keep* in Webster's Diction-

ary, under the first head, is, " to hold;" " to retain in one's power or possession;" "not to lose or part with;" "as to keep a house or a farm." By this language, therefore, the plaintiff was entitled to hold, to retain in his possession, and not to lose or part with his insurance; which must refer to that, which he previously had, as well as to that, which he was permitted to procure.

He was allowed to keep insured in an *additional sum*, provided, &c. This secured the privilege of an insurance of a further amount upon the property; and not limited so, that the payment of a loss, by one company would be payment *pro tanto* for another. Each company, by this language, would be bound to pay the sum for which it became liable independent of the other.

According to the agreement of the parties, the plaintiff must be                                       *Nonsuit.*

SHEPLEY, C. J., and WELLS, HOWARD and APPLETON, J. J., concurred.

