Gustav W. Dahlberg, Respondent, *v.* St. Louis Mutual
Fire and Marine Insurance Company, Appellant.

**June 4, 1878.**

1. In case of a defence to a policy grounded on "other insurance" not noti-
fied, *held*, that the obligation of notice does not extend to all existing
policies not void on their face; but the issue to be tried is whether, on all
the facts legally in evidence, the "other insurance" is valid, and the
policy binding.

2. Where the agent of the company made inquiries of the owner as to the prop-
erty and took notes of his answers, which were correct, and where, after
having prepared the policy, and just before delivering it, the agent handed
to the owner a printed application in which the agent had himself written
the answers, and told the owner to sign the application, which the latter
at once did in presence of the agent, without reading it or knowing its
contents, the misrepresentation of a material fact in such application
would not necessarily enable the insurer to avoid payment of the policy.

Appeal from St. Louis Circuit Court.

*Reversed and remanded.*

James Taussig, for appellant: The paper signed by the
insured was not his application or statement, but was the
statement of the Hope Company's agent. — *Combs* v. *Insur-
ance Co.*, 43 Mo. 150; *Plumb* v. *Insurance Co.*, 18 N. Y.
392. The action of the Hope Company's agent operated
as an estoppel *in pais* on that company to deny the validity
of the policy. — *Rowley* v. *Insurance Co.*, 36 N. Y. 550;
*Franklin* v. *Insurance Co.*, 42 Mo. 460; *Union, etc., Co.*,
v. *Wilkinson*, 13 Wall. 222. The policy issued by the Hope
Company was " other insurance," and notice was unneces-
sary. — *Hutchinson* v. *Insurance Co.*, 21 Mo. 101; *Roth-
schild* v. *Insurance Co.*, 52 Mo. 362; *Obermeyer* v. *Insur-
ance Co.*, 43 Mo. 576; *Bigler* v. *Insurance Co.*, 22 N. Y.
402; *Philbrook* v. *Insurance Co.*, 37 Me. 137; *Clark* v.
*Insurance Co.*, 6 Cush. 342.

W. J. Sharman, for respondent: If the second policy
against which the contract stipulates cannot be enforced, it
does not avoid the first, notwithstanding the clause of for-

feiture. — *Obermeyer* v. *Insurance Co.*, 43 Mo. 577; *Gale*
v. *Belknap*, 41 N. H. 70; *Stacey* v. *Insurance Co.*, 2 Watts
& S. 506; *Jackson* v. *Insurance Co.*, 23 Pick. 418; *Insurance Co.* v. *Goodell*, 35 N. H. 232; *Clark* v. *Insurance Co.*,
6 .Cush. 342; *Insurance Co.* v. *Slaughter*, 20 Ind. 520.
The Hope policy was absolutely void. — *Burritt* v. *Insurance
Co.*, 5 Hill, 188; *Kennedy* v. *Insurance Co.*, 10 Barb. 285;
*Williams* v. *Insurance Co.*, 31 Me. 219; *Battles* v. *Insurance Co.*, 41 Mo. 208; *Hardy* v. *Insurance Co.*, 4 Allen,
217; *Franklin* v. *Insurance Co.*, 42 Mo. 456; *Dawson* v.
*Insurance Co.*, 1 Mo. App. 317; *Fuller* v. *Insurance Co.*,
36 Wis. 603.

HAYDEN, J., delivered the opinion of the court.

This is an action upon a policy of insurance issued by
the appellant, a mutual company, upon a house of which
the respondent was the owner.  The answer admitted the
issue of the policy, and pleaded the following provision :
" If the assured or his assigns shall hereafter make any
other insurance on the same property, and shall not with all
reasonable diligence give notice thereof to this company,
and have the same indorsed on this policy, or otherwise acknowledged by them in writing, this policy shall cease to be
of effect."   The answer then averred that the respondent,
without notice to the appellant, effected other insurance on
the same property in the Hope Insurance Company.   The
reply was to the effect that the " other insurance" was not
valid insurance.   When the policy sued on was taken out,
there was a mortgage on the property, held by the Biddle
Bank, and notice of this mortgage was indorsed on the appellant's policy.   There was testimony tending to show that
when the respondent applied for insurance in the Hope
Company, the agent of the latter inquired as to the value
and situation of the property, and amount of insurance on
it, and took memoranda of the respondent's oral answers,
which were correct; that the agent examined the property,

decided to take the risk, and prepared the policy; that the respondent paid his premium and received his policy; that before delivering the policy, the agent handed to the respondent a written application and told the respondent to sign it, which the latter did, without knowledge as to its contents.

This was a printed form, and the written answers had been filled in by the agent. To the question, " Is any other person interested in the property, as mortgagee or otherwise?" the agent wrote, " No." There was testimony tending to show that the respondent gave no such answer, and did not know any such was given, but signed the paper because requested to do so, and immediately received the policy.

The Hope Company was also a mutual company, and the terms of its charter formed a part of the policy. The charter provided that insurers should become members, etc., and had the following clause: " But if * * * the premises be encumbered, the policy shall be void, unless the true title of the insured, and the encumbrances, be expressed in the written or printed application of the insured." At the time of the issuing of the Hope policy the mortgage to the bank was in force, and remained so until after the fire. The respondent never informed the Hope Company of the existence of the encumbrance at any time before or when he received the policy; nor did he, at any time before the fire, inform the appellant of his effecting insurance in the Hope Company. No indorsement of such insurance was made on the policy sued on.

When the house was damaged by fire, the respondent filed proofs with both companies, claiming the full amounts. In the proof filed with the appellant he disclosed his policy in the Hope Company, treating it as a valid insurance. The Hope Company, after concluding that it was not bound to pay because of the answer above given, and declaring that the policy was void in its inception, paid the respondent one-half of his loss. The present suit upon the first policy

is upon a basis of a loss of $3,000 ; but though the respondent claimed $1,500, the finding of the court below, sitting as a jury, was only for $1,102.47.

When the validity of the policy sued on depends on the validity of another policy upon the same property, it would seem, if the question be regarded as one of principle and apart from authority, that the issue thus presented ought to be tried in the same way as any other issue on which the main issue in a case is found to depend.    It is difficult to see why other tests than those by which legal questions are ordinarily determined should be applied, because the issue happens to turn on facts connected with another policy. The conduct of the insurer whose policy is incidentally in issue would seem to affect the question of the validity of the policy issued by him, and thereby to determine the rights of the defendant, a stranger, whose liability is the main issue in the case, only as far as the acts of such insurer, thus incidentally involved, have the requisite legal efficacy. If, for instance, while the other insurance company denies the legal obligation, it can, by merely paying a certain sum, or by making a settlement on grounds wholly independent of any legal liability, thereby determine the rights of a stranger to it on another policy, it should seem that the question whether in fact or in law there was any insurance with such other company ought to be declared an irrelevant question.    The doctrine then would be that the " other insurance " need not even have been a valid insurance, but only such claim or pretence of insurance, at most colorable, accompanied with a belief in it by the insured, at some time during the existence of the policy sued on, as would make notice of its existence a material fact to the defendant. Thus, if it is one reason why there should be notice that by additional insurance the risk may be unduly increased, it may be argued that the validity of the policy, so far, cuts no figure, since the risk would as well be increased by other insurance valid merely in the belief of the insured, as by

other insurance valid in law.   But it is noticeable that the courts which follow the case of *Carpenter* v. *Providence Insurance Company* admit that if the policy is void on its face, without reference to extrinsic facts, then no notice would be necessary.   16 Pet. 510 ; *Bigler* v. *New York, etc., Ins. Co.,* 22 N. Y. 402.   But a policy the evidence of the invalidity of which appears on its face, as well as a policy the evidence of the invalidity of which appears *aliunde*, may be treated by the parties to it as a subsisting policy.   Such treatment does not depend upon any matter of evidence, nor, it would seem, upon a distinction between a void and voidable policy.   Then why insist in such cases the policy is not void, but merely voidable ?   As any claim or pretence of insurance may be treated by the parties as valid, and the paper considered a policy, this ought to be sufficient ; and such seems really the doctrine.   Thus it is said in the case in Peters, and the words are quoted with approbation in *Bigler* v. *Insurance Company, supra:* "Indeed, we are not prepared to say that the court might not have gone further, and have held that a policy existing and in the hands of the insured, and not utterly void upon its very face, without any reference whatever to extrinsic facts, should have been notified to the underwriters, even though by proofs afforded by such extrinsic facts it might be held in its very origin and concoction a nullity."   So further on, upon page 511, it is said : "We are, then, of opinion that there is no error in the second instruction.   On the contrary, there is strong ground to contend that the stipulations in the policy as to notice of any prior and subsequent policies were designed to apply to all cases of policies then existing in point of fact, without any inquiry into their original validity and effect, or whether they might be void or voidable."   Thus it would seem that the result of this doctrine is to present to the court for its decision a question which ignores the legal issue as to the validity of the insurance, as such, and make the liability of the defendant depend, perhaps, upon compromises or ad-

justments made by the parties, wholly without reference to any legal liability. The facts before the court may show that no legal obligation ever existed, and that the recognition and payment were merely a gratuity; yet this gratuity is made the test of a legal obligation in the defendant. This singular result is apparently the consequence of a desire to do equity between the parties, and to prevent the plaintiff, in such cases, from taking the advantage of his own wrong. But surely it ignores the consideration that legal questions must be decided by legal methods, and that fixed rules must exist, even if they do work occasional hardship. If the "other insurance" does not mean such a contract of insurance as is legally enforceable, then no certain test can be applied, and we abandon legal guides. If the acts of the parties are to have, not that efficacy which the law gives them, by which, for instance, the insurer may before a loss waive certain conditions then performable, or after a loss waive certain conditions then to be performed, but to have the efficacy of waiving into existence a policy which was never made, by paying a gratuity founded on a non-legal claim, this seems a confession that legal principles are insufficient for the solution of this peculiar question.

The failure to give notice to the defendant does not necessarily arise from fraud on the part of the plaintiff, and the general rule cannot be based upon this ground. The omission may be perfectly innocent. Nor, indeed, is it claimed that one rule applies where there is fraud, and a different rule where the plaintiff merely neglects to give notice.

The sound conclusion would seem to be that in cases like that at bar the "other insurance" must be legal insurance, and that the true issue is whether the policy, not on its face, but on all the facts legally in evidence, was binding upon the insurer. This is the view, we think, taken by the best-reasoned cases. *Jackson* v. *Massachusetts, etc., Ins. Co.*, 23 Pick. 423; *Stacey* v. *Franklin, etc., Ins. Co.*, 2

Watts & S. 544; *Clark* v. *New England, etc., Ins. Co.,* 6
Cush. 342; *Hardy* v. *Union, etc., Ins. Co.,* 4 Allen, 217;
*Gale* v. *Belknap Ins. Co.,* 41 N. H. 170; *Philbrook* v.
*Insurance Co.,* 37 Me. 137.

In this State the question here involved has never been
passed upon; but the rule laid down in *Obermeyer* v. *Globe
Insurance Company,* 43 Mo. 573, furnishes a strong argu-
ment for the application of the doctrine as now declared.
There the defence was failure to notify as to subsequent insur-
ance, and over-insurance beyond the permitted amount. The
Supreme Court held that though the over-insurance existed
during a portion of the lifetime of the policy sued on, and
though, in violation of the usual clauses, other insurance
was procured without notice or indorsement, yet as there
was no over-insurance at the time of the loss, there was no
forfeiture. See, however, *Rothschild* v. *American Central
Ins. Co.,* 62 Mo. 356. The intent of the insured there
was to replace old policies by new ones; but by the doc-
trine of that case the whole question is made to turn on the
condition of things at the time of the loss. As the over-
insurance existed for more than a month, the policy was, in
terms, violated. But as it is held that such violation, as
such, has no legal consequences, as a matter of course no
duty is imposed. By the rule laid down, if the insured is
careful or lucky enough to have no prohibited insurance at
the time of the fire, there has been no need to give notice.
Such notice may be highly valuable to the insurer; and
upon such value and the insurer's equity, so to speak, to
such notice, even in the case of a non-legal insurance, the
doctrine of the Supreme Court of the United States, as
laid down by Judge Story, is founded. See passages quoted
*supra.* But if, as held in the Obermeyer case, the plain-
tiff was not bound to give notice of the over-insurance,
which existed for more than a month, arising, too, upon
valid policies, no such equitable right to notice as that
insisted upon by Judge Story could possibly exist. The

legal theory of the one case seems entirely inconsistent with that of the other; and the doctrine of *color of insurance* increases the difference.

If in the present case the Hope Insurance Company had defended on the ground that Dahlberg had misrepresented or concealed a material fact, it is by no means certain that they could have maintained their defence. In signing the form as filled out for him to sign by the company's agent, Dahlberg appears to have acted in perfect innocence. He might, it is true, have read the form when it was handed to him; but not only was he not asked to do so, but from what occurred he might well have supposed he was not expected to do so, and that the company took upon themselves the responsibility of correctness in a statement which they had made without consulting him. The testimony of Schmitt, the company's agent, upon these points is stronger even than that of Dahlberg, and tends to show that the company took no care to procure the intelligent assent of Dahlberg, and had no right to suppose that he knew or assented to what the paper contained. The inquiries which they had made of him he appears to have answered intelligently and frankly. The inference is fair that they cared to make no others, but were willing to, as they did, immediately close the contract by receiving the premium and issuing the policy. If there was error, it was attributable to the company and to the mistakes or carelessness of its agents, and not, if the testimony of the witnesses is to be believed, to the plaintiff. *Rowley* v. *Empire Ins. Co.*, 36 N. Y. 550; *Plumb* v. *Insurance Co.*, 18 N. Y. 392; *Combs* v. *Hannibal, etc., Ins. Co.*, 43 Mo. 148; *Union, etc., Ins. Co.* v. *Williamson*, 13 Wall. 222. The case should have been put upon instructions based upon the testimony of these witnesses. It does not lie in the mouth of a defendant under such circumstances to urge a want of good faith, when the inference is plain that that defendant could not in good faith have believed

that, in the little time afforded, the insured could have read and his mind assented to the many questions and answers contained in the paper.

There is nothing in the point that the two policies were on different insurable interests. The plaintiff was a competent witness. The judgment is reversed, and the cause remanded to be proceeded with according to this opinion. All the judges concur.