[S. F. No. 8112. In Bank.—August 30, 1917.]

PACIFIC COAST CASUALTY COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, Respondent.

WORKMEN'S COMPENSATION POLICY—ACCIDENTS OF EMPLOYEES OF MINING COMPANY—SUPERINTENDENT NOT INCLUDED.—A workmen's compensation policy covering miners, hoistmen, surface trammen, timekeeper and roustabout, millmen, blacksmith and helper, and cook and waiter, does not cover the occupation of mine superintendent.

ID.—ERASURES IN POLICY—ACCEPTANCE WITHOUT INDORSEMENT OF INSURER—VALIDITY OF POLICY.—An employer under an accident indemnity policy providing that no erasure or change appearing on the policy as originally printed, and no change or waiver of any of its terms, shall be valid unless set forth in an indorsement signed by certain designated officers of the company, cannot question the binding force of the policy accepted with a certain statement stricken out and not bearing such an indorsement where the company stands on the policy as issued.

APPLICATION for a Writ of Certiorari to review an award of the Industrial Accident Commission.

The facts are stated in the opinion of the court.

T. T. C. Gregory, D. Hadsell, and Joe G. Sweet, for Petitioner.

Christopher M. Bradley, and Warren H. Pillsbury, **for** Respondent.

SLOSS, J.—*Certiorari* to review an award of the Accident Commission.

William Angus was president of White Gulch Mining Company. While acting as superintendent of its mine he entered the mine and met his death through asphyxiation. Application for compensation was made by his widow, Pacific Coast Casualty Company, as insurance carrier, being joined with the Mining Company. The commission made an award against both defendants. The petition for review was presented by the Casualty Company alone.

In addition to other points, the petitioner contends that Angus, if shown to be in the employ of the Mining Company, was not within the class of employees whose injuries were covered by the policy of insurance issued by it. If this position be well taken, the award against the Casualty Company cannot, of course, stand.

At the hearing before the commission it was stipulated between all the parties to the proceeding that the Mining Company had "a Workmen's Compensation policy with the Pacific Coast Casualty Company covering the employees operating in its mining properties at Coulterville covering miners, hoistmen, surface trammen, timekeeper and roustabout, millmen, blacksmith and helper, and cook and waiter." The commission's award is based upon a finding that Angus was killed while in the employment of the mining company as a mine superintendent. It seems perfectly clear that the occupation of a mine superintendent is not included within any of the employments specifically designated in the stipulation. The respondents do not, indeed, dispute this. But it is argued that the policy itself, a copy of which is attached to the return, was intended to have a broader scope, and to cover the superintendent, as well as the miners performing manual labor in the mine. It is questionable whether the effect of a stipulation can be altered by pointing to evidence which may conflict with it. But waiving this point, we think the policy itself was clearly intended to cover only employees

engaged in the specified employments.   The opening clause of the policy states that "in consideration of the estimated premium herein provided and of the statements set forth in the Schedule of Statements appended hereto and made a part and the basis hereof (herein called the Schedule), which statements . . . the Assured makes and warrants to be true . . . , the Pacific Coast Casualty Company . . . does hereby agree (1) to assume all liability of the Assured for the payment of the medical, surgical, and hospital services . . . and for the compensation required by the Workmen's Compensation, Insurance and Safety Act, known as Chapter 176 of the Laws of 1913 of the State of California." The respondents argue that by this general language the insurer undertook to meet any liability for which the mining company might, under the Workmen's Compensation Act, become liable to any of its employees, of whatever class or kind.   But the policy, like any other contract, must be read as a whole, and as including the "appended" application, or "Schedule of Statements," expressly made a "part and the basis of" the policy.   (*People's Ice Co.* v. *Employers' etc. Corp.,* 161 Mass. 122, [36 N. E. 754] ; *Carson* v. *Jersey City Ins. Co.,* 43 N. J. L. 300, [39 Am. Rep. 584] ; *Jennings* v. *Chenango County Mut. Ins. Co.,* 2 Denio (N. Y.), 75; *Bobbitt* v. *Insurance Co.,* 66 N. C. 70, [8 Am. Rep. 494] ; *Chrisman* v. *State Ins. Co.,* 16 Or. 283, [18 Pac. 466] ; *Philbrook* v. *New England Mut. Fire Ins. Co.,* 37 Me. 137.)   One of the provisions of the policy shows that the premium is based "upon the entire compensation earned during the period of this policy by all employees of the Assured *engaged in the business or occupations set forth in the Schedule and not specifically excepted."* It is further provided that if, at the end of the policy period, it shall appear that such compensation exceeds the amount estimated at the time of the issuance of the policy, the assured shall pay a further premium calculated on said excess; while if the actual compensation is less than the amount estimated, the company shall refund a proportional part of the premium. One of the statements in the schedule describes, under the head, "The kind of trade, business, profession or occupation (manual classification)," the following occupations: "Miners, hoistman, surface trammen, timekeeper and roustabout, millmen, blacksmith and helper, and cook and waiter." There is

no other statement indicating either the business of the employer or the occupations of its workmen.

It is apparent, therefore, that the premium for which the Casualty Company undertook to insure the Mining Company was based upon the pay received by the specified employees. The fair construction of the policy is that which the parties adopted when they made their stipulation of facts, namely, that the insurance was designed to cover employees of the designated classes, they being the ones whose compensation furnished the measure of the premium, in consideration of which the Casualty Company assumed the risk.

The copy of the policy, as it appears in the return, shows a certain statement in the "Schedule" to have been stricken out by the running of lines through it. This statement, if permitted to stand, would make the policy cover superintendents. The respondents argue that the cancellation must be disregarded under a clause in the policy providing that "no erasure or change appearing on this policy as originally printed, and no change or waiver of any of its terms," shall be valid unless set forth in an indorsement signed by certain designated officers of the company. This clause was manifestly intended for the protection of the insurer against unauthorized acts of its agents. If the Casualty Company is willing to stand on the policy as issued to the insured, the latter is in no position to question the binding force of the contract accepted by it. Furthermore, the original policy was not introduced in evidence, and there was presented to the commission no question of the form in which it was written. The Casualty Company presented a copy, and it was stipulated that this was a "true and correct copy" of the policy issued and in force. The stipulation must be taken to refer to the copy as it read on its face, i. e., with the statement in question eliminated.

The award against the Casualty Company was, therefore, not justified. This conclusion does not, however, affect the position of the White Gulch Mining Company, which has not attacked the award against it.

The award is annulled in so far as it is directed against Pacific Coast Casualty Company.

Shaw, J., Henshaw, J., Lawlor, J., and Angellotti, C. J., concurred.