## C. W. OBERMEYER *et al.*, Appellants, *v.* THE GLOBE MUTUAL INSURANCE COMPANY, Respondent.

1. *Insurance, Fire, action upon.— Over-insurance—Forfeiture of policy, clause of, how construed.*—In general, a previous or subsequent insurance without notice—in case of a policy requiring such notice, and with a clause forfeiting the policy in default of such notice—discharges the obligation of the insurance company. Such concealment is a fraud upon the company. And in an action on the policy, the insured will not be permitted to show that there was no fraud in fact, or even that the insurer, when the loss is less than the policy, is benefited by the over-insurance, by being required only to make contribution instead of paying the stipulated sum. But if a second policy, against which the contract stipulates, is itself a void one, or one that cannot be enforced, it will not avoid the first, notwithstanding the clause of forfeiture. The construction given to such covenants accords with their object—to take away from the assured any motive to destroy his property or to be lax in saving it.
2. *Insurance, Fire—Over-insurance—Policies, to avoid the one sued on, should exist at time of loss.*—To constitute a successful defense to an action on an insurance policy, it should appear that the policies relied upon to avoid the one containing the covenant of forfeiture existed and were in force at the time of the loss.
3. *Insurance, Fire— Clauses of forfeiture — Concealment of over-insurance at date of policy and afterward.*—In determining the effect of clauses of forfeiture in policies of insurance, there is an obvious distinction between a concealment or false statement of facts existing at the commencement of the risk and a neglect of duty in regard to a matter occurring afterward. In the one case the policy never takes effect, the risk is never assumed, while in the other it is only interrupted.
4. *Insurance, Fire—Policy, action on—Over-insurance—Intention of assured— Amount of insurance at date of loss.*—In an action on a policy of insurance, where it appeared that the assured intended to comply literally with the stipulations of his contract forfeiting his policy in case of over-insurance, but that, having been notified that one of his policies would be canceled at a certain time, he procured another insurance of an equal amount, and it turned out afterward that the policy was not canceled until about a month after the last insurance had been effected, thus making an over-insurance for a period terminating more than two months before the loss : *held,* that such a violation of the policy did not discharge the defendant.

### *Appeal from St. Louis Circuit Court.*

*Brockmeyer & Jones,* and *Bryan,* for appellants.

I. Where the over-insurance exists at the time of the fire, a recovery upon a policy containing conditions similar to those in the case at bar will not be permitted. But no case can be found

to the effect that a recovery cannot be had because of a temporary over-insurance, where the over-insurance had ceased to exist at the time of the fire. (N. E. Fire & Marine Ins. Co. v. Schettler, 38 Ill. 166; Mitchell v. Lycoming Mut. Ins. Co., 51 Penn. St. 409.) Although there has been a non-compliance with a condition, express or implied, yet when that non-compliance has ceased, and no damage has been caused thereby, there ceases to be any ground for enforcing a penalty or forfeiture because of this non-compliance. (Powers v. Ocean Ins. Co., 19 La. 28.)

II. The condition as to over-insurance in the case at bar must be regarded as a condition subsequent, the breach of which works a forfeiture or divests an estate, and as contradistinguished from the condition precedent, the performance of which is necessary to create an estate or right; and the construction by courts of justice never favors the divesting an estate or the destroying a vested right. (1 Phil. Ins. p. 469, § 870; id. p. 460, § 835.)

III. When we consider the design and object of limiting the amount of insurance to be held by the insured — that it can only be to guard against his dishonest destruction of the property, and to secure his vigilant co-operation and interest in preventing its destruction, by leaving a considerable amount at his own risk — it becomes manifest in the case at bar that, though the letter of the condition relative to over-insurance may have been violated, it could not have been in its spirit and essence, or in its substantial import.

*Rankin & Hayden*, for respondent.

The failure of the insured to notify the insurer of the policy subsequently taken out in excess of the amount allowed by the written stipulation of the policy, and to have the policy so altered as to admit the additional insurance, rendered the policy void. (Gilbert v. The Phœnix Ins. Co., 36 Barb. 372; Benedict v. Ocean Ins. Co., 31 N. Y. 389; Hardy v. Union Ins. Co., 4 Allen, 217; Rising Sun Ins. Co. v. Slaughter, 20 Ind. 520; David v. Hartford Ins. Co., 13 Iowa, 69; Gale v. Belknap, 41 N. H. 170; Kimball v. Howard Ins. Co., 8 Gray, 33; Bigler v.

The New York Ins. Co., 22 N. Y. 402 ; Conway Tool Co. v. Hudson River Ins. Co., 12 Cush. 144 ; Simpson v. The Pennsylvania Fire Ins. Co., 38 Penn. St. 250 ; Hale v. Mechanics' Ins. Co., 6 Gray, 169 ; Murphy v. Atlas Ins. Co., 14 N. Y. 79 ; Mellen v. The Hamilton Fire Ins. Co., 17 N. Y. 609 ; Carpenter v. The Providence Mut. Ins. Co., 16 Pet. 495.) It matters little, so far as the present case is concerned, whether the printed clauses in the policy against over-insurance were " warranties " or " covenants." They were express in their terms, and by them the insured was bound to give notice of any additional insurance over the stipulated amount, and have the same indorsed on the policy or otherwise acknowledged in writing. It is idle to say that the over-insurance did not exist at the time of the fire. The object of the clauses against over-insurance is to provide against the temptation to destroy the property and get the insurance money. If the property was over-insured at any time during the life of the defendant's policy, its risk was of course increased. Besides, the printed clause provides against other insurance, not at the time of the fire, but during the lifetime of the policy. If the provisions were merely against over-insurance at the time of the fire, the wording would be very different.

BLISS, Judge, delivered the opinion of the court.

On the 15th of August, 1865, the defendant issued a fire insurance policy to the plaintiffs upon their mill for $3,000 — $1,500 upon the mill, and $1,500 upon the machinery — with the following clause in writing : " Eighteen thousand dollars on same insured elsewhere, and two thousand additional to be insured, to be reported in total when required." The printed part of the policy contained the usual stipulations for notice and indorsement upon the policy or acknowledgment in writing of all previous and subsequent insurances, in default of which the policy should cease and be of no effect.

The property was burned on the 27th of February, 1866, and this suit is to recover the $3,000 insurance. The defendant answers that the assured made other insurances of the property, which, with the amount already insured, exceeded the sum of

$23,000, and that said amount in excess was made without notice to the defendant, and without having it indorsed on the policy or acknowledged in writing, " although the total amount of insurance contracted for in said policy, on said property, was not to exceed $23,000, and although it is agreed on, as a condition of insurance in said policy," etc., setting forth the conditions of forfeiture. No reply at that time being required, the answer raised the issue whether more than $23,000 had been insured on the property, that amount being permitted by the clause in writing, before quoted.

The evidence showed that at the date of the policy the total amount of insurance was $18,000, besides the policy issued by the defendant, and at the date of the loss only $12,000, including said policy. It also appeared that on the 13th of September, 1865, the plaintiffs were insured in the Morris Company for $2,000, making the stipulated amount $23,000, and, on the 11th day of November following, in the "National" for $2,500, of which they gave defendant no notice, and about the middle of December, more than two months before the fire, some of the old policies were canceled, so as to bring the whole amount of insurance considerably within the amount stipulated. The plaintiffs undertook to prove that before they took the additional $2,500 more than they had a right to take, one of the old policies for the same amount had been canceled, thus making not even a temporary over-insurance; but they only succeeded in proving that in June, 1865, the agent of the company that had issued it came to inspect some additional improvements and told them he should cancel their policy at the end of the year, which was before the new policy was taken; but it appeared he did not actually cancel it until December, making an over insurance of more than a month. The Circuit Court treated this over-insurance, without notice or indorsement upon the policy, as a forfeiture, and rendered judgment for the defendant. The case is brought here by appeal, and that is the only question raised upon the record.

The general doctrine that a previous or subsequent insurance without notice, in a policy requiring such notice, and with a clause of forfeiture like that of the defendant, discharges the

obligation of the company that insures, is well settled and universally recognized. That this should be the effect of the concealment, is not only a part of the contract, and obligatory upon that ground, but the forfeiture is reasonable and just. The insurer can never know the full extent of his risk unless he knows everything that bears upon that risk. He has a right to rely upon the interest of the assured to preserve the property, which he can never do if the latter shall be at liberty to so increase his insurance as to destroy that interest. To deprive the insurer of the aid of this powerful motive is a fraud upon him. He has contracted for that protection, and should receive its full benefit; and the plaintiff shall not be permitted to show that there was no fraud in fact, that the property was well guarded, that the insured could not have prevented the loss, etc., or even that the insurer, when the loss is less than the policies, is benefited by the over-insurance by being required only to make contribution instead of paying the stipulated sum. It is one of those contracts not regarded with the jealousy due to ordinary forfeitures, but it will be enforced according to its honest intent and fair interpretation.

But there are some apparent, though not real, exceptions to this doctrine. The contract is to be enforced according to its spirit, not its letter merely. Thus, it is also well settled, though perhaps not with the same unanimity, that if the second policy, against which the contract stipulates, is itself a void one, or one that cannot be enforced, it shall not avoid the first, notwithstanding the clause of forfeiture. (Gale v. Belknap, 41 N. H. 70; Jackson v. Massachusetts Ins. Co., 23 Pick. 418; Clark v. New England Mut. Fire Ins. Co., 6 Cush. 342; Rising Sun Ins. Co. v. Slaughter, 20 Ind. 520.) But see Carpenter v. The P. W. Ins. Co., 16 Pet. 495; Bigler v. New York C. Ins. Co., 22 N. Y. 402; and Mitchell v. Lycoming Mut. Ins. Co., 51 Penn. 402, which seem to contradict the other opinions, at least so far as to hold that the latter policy must be actually avoided by the insurer before the first will be held valid. Thus it is seen that this covenant is not construed literally, for, if it were, any forbidden policy, whether it could be enforced or not, would release the one

containing the prohibition. The construction given such covenants fully accords with their object — to take away from the assured any motive to destroy his property or to be lax in saving it.

The Supreme Court of Illinois, in N. E. F. & M. Ins. Co. v. Schettler, 38 Ill. 166, have applied the principle to another state of facts. The plaintiff in error had insured the defendant, with a proviso in regard to other insurance similar to the one under consideration. During the year, the person insured, by the written consent of plaintiff's agent, moved his store building and goods upon another lot in town. Before and after he so moved, he had three other policies upon the property, of which the plaintiff had no notice. The court held that the policy was not forfeited, for the reason that the removal of the store rendered the other policies worthless; and though there had been an over-insurance during part of the life of the plaintiff's policy, yet, when the loss occurred, it was the only subsisting one, and therefore valid.

Upon the effect of over-insurance, the Supreme Court of Pennsylvania uses this language: "The over-insurance was attempted to be surmounted by the alleged invalidity of the subsequent policies. We think the court adopted the proper distinction: if they were void at the time of the loss, they constituted no obstacle; but if avoidable only by reason of some breach of condition enabling the insurers to avoid them, but which they had waived, the over-insurance undoubtedly existed." ( Mitchell v. Lycoming Mut. Ins. Co., *supra*.)

These last two cases expressly require, one by statement and the other directly, that the policies relied upon to avoid the one containing the covenant of forfeiture should exist and be in force at the time of the loss; and, upon an examination of the numerous authorities upon the general subject, I do not find one to contradict them. In the great body of the cases the over-insurance existed when the loss occurred, and the question could not be raised.

Analogous to forfeitures for over-insurance are those that arise from selling the property. Such sale ends the insurance, both because the insurable interest is parted with, and because it is contrary to the usual terms of the policy. And yet a sale, in the

ordinary sense of the word, has not that effect. The syllabus of Trumbull v. The Portage Canal Marine Ins. Co., 12 Ohio, 305, states the recognized doctrine: "When the assured has contracted to convey the assured premises at a future day, upon payment of the purchase money, and between the date of the contract and the day of payment the premises are destroyed by fire, this is not such an alienation as would defeat the policy; that the plaintiffs had an insurable interest and the legal title, and an equity equal to the purchase money or the whole value of the premises, and, being in possession, they might recover upon the policy."

In Lane v. Maine Mut. Fire Ins. Co., 3 Fairf., Me., 44, upon a policy expressly stipulating against sale, when, during the existence of a policy, a merchant sold the goods and leased the store, both of which were insured, and in about six months, and before the fire, took back both the store and the unsold goods, it was held that the policy was not forfeited. So, in Powers v. Ocean Ins. Co., 19 La. 28, the Supreme Court of Louisiana held that if insured property were sold, and, upon non-payment of the purchase money, were taken back, and afterward burned, the policy was good, notwithstanding the stipulation for forfeiture; and that "there was a suspension of the risk, but the risk revived as soon as the property reverted back to the plaintiff." Our own court have held the same doctrine in Morrison's Adm'r v. Tennessee M. & F. Ins. Co., 18 Mo. 262, though it was not necessary to go so far in Powers v. Ocean Ins. Co.

Thus it is seen that the rigid rules of the English courts, in relation to express warranties, are not applied to stipulations for notices of subsequent insurances or to subsequent sales. They are contracts, to be enforced, like other contracts, according to their true spirit.

There is an obvious distinction between a concealment or false statement of facts existing at the commencement of the risk and a neglect of duty in regard to a matter occurring afterward. In the one case the policy never takes effect — the risk is never assumed — while in the other it is only interrupted. I cannot find that it has ever been held that a temporary non-compliance with an express warranty even of itself works a forfeiture, unless

it is simultaneous with the commencement of the risk. It must have been in view of this distinction that courts have held, as before quoted, that the operation of a policy might be suspended and the risk re-attach, which could hardly be true if it never began to run ; though in N. E. F. & M. Ins. Co. v. Schettler it does not appear that it attached until after the removal of the store.

The form of warranties in marine insurance, where they arose, was express, as that the assured "warrants" this or that to be so, or "warrants" that such a thing will not be done, or that he will do or will not do this or that, and "they were written on the face of the policy." (Arnold.) The greatest strictness of fact or compliance was held to be necessary in such warranties. But many printed stipulations have come to be treated as warranties, and, where they relate to existing facts, are usually regarded as conditions precedent to liability for the loss. As to the future, the same strictness is not always required, and the inclination of of the courts to substitute the spirit of the contract for the letter is very apparent, and as far as possible these stipulations are taken out of the category of warranties, and some less stringent term applied to them.

"Stipulations, though having the character of warranties and conditions, are to be reasonably construed in reference to the subject matter, and not captiously or literally." (1 Phil. Ins. § 872. See observations of Justice Shaw in Haughton v. Man. M. F. Ins. Co., 8 Metc. 114 ; also see Shaw v. Robberds et al., 6 Ad. & El. 75 ; Mayall v. Mitford, id. 670.)

In the case at bar it is clear that the assured intended to comply literally with the stipulations of his contract. Having been notified that one of his policies would be canceled at a certain time, he procured another insurance of an equal amount. But it turned out that the policy was not canceled until about a month after the last insurance had been effected, thus making an over-insurance for a period terminating more than two months before the loss. In holding this such a violation of the conditions of the policy as to wholly discharge the defendant, we think the Circuit Court erred, and that its judgment should be reversed.

The cause is remanded, the other judges concurring.