ST. LOUIS UNION TRUST COMPANY, Appellant, v.
MacGOVERN & COMPANY.

Division One, March 5, 1923.

1. **CONTRACT: Construction: Intention.**  The cardinal rule for the
construction of all written instruments is to ascertain the intention
of the parties as shown by the terms of the instrument, and if
there is any lack of clearness in the language used the circum-
stances surrounding the parties at the time the instrument was
made may be taken into consideration, in order to place the court
as near as may be in their situation and view their instrument in
the light they viewed it.

2. **TROVER: Sale of Mortgaged Property: Power to Dispose of.**  Where
an old glass factory was in a dilapidated and almost abandoned
condition, and could not be operated by the mortgagor without a
disposal of some of the machinery, which had been injured by
fire and flood, and the securing of differing machinery, and the
deed of trust contained a provision that until the mortgagor made
default in payment of the principal or interest on the note he
should "have possession, use and control of all the property cov-
ered by this indenture, with the right at all times to alter, change,
add to, repair, dispose of and replace any machinery, engines,

St. Louis Union Trust Co. v. MacGovern Co.

fixtures, appliances, tools and motors, provided only that the security of the within indenture shall not thereby be in any wise reduced or impaired," the words "dispose of" were used in a broad sense, and the mortgagor having sold certain unusable machinery for $10,000 in cash and in addition received in exchange a motor generator, and used the generator in operating and the money in restoring and improving the dilapidated plant, the security was not reduced or impaired, and the trustee is not entitled to recover the value of the machinery thus sold and exchanged before default.

3. **DISPOSE OF:** Meaning. The term "dispose of" has a broader meaning than the word "sell," and includes the power to exchange and sell unless restricted by the context or circumstances.

Appeal from St. Louis City Circuit Court.—*Hon. Benjamin J. Klene,* Judge.

AFFIRMED.

*Lewis & Rice* and *Wilson & Trueblood* for appellant.

(1) A mortgage which authorizes the mortgagor to repair, dispose of and replace worn out or useless machinery and tools, provided that the security of the mortgage is not thereby diminished or impaired, does not authorize the mortgagor to sell for his own benefit valuable property subject to the mortgage. Hasbrouck v. Rich, 113 Mo. App. 389; Jennings v. Sparkman, 48 Mo. App. 246. (2) The phrase "dispose of" is *nomen generalissimum,* and standing by itself without qualification has no technical signification, but when it is associated in the context with other words, then under the principle contained in the expression, *noscitur a sociis,* its meaning takes on some limitation from the association. Grace v. Perry, 197 Mo. 550; Whitfield v. Thompson, 38 So. (Miss.) 113; Phelps v. Harris, 101 U. S. 370; 25 Lawyers Edition U. S. 855.

*Jourdan, Rassieur & Pierce* for respondent.

St. Louis Union Trust Co. v. MacGovern Co.

(1)  In order to maintain trover for the wrongful conversion of personal property, it is essential that the plaintiff both plead and prove that at the time of the alleged conversion he had possession of or absolute right to the immediate possession of the property.  38 Cyc. 2044; 11 Cor. Jur. 599 to 602; Bank v. Fisher, 55 Mo. App. 51; Schwald v. Brunjes, 139 Mo. App. 516; O'Toole v. Lowenstein, 177 Mo. App. 662; Bank v. Land Co., 152 Mo. 145, 157.  (2)  A clause in a chattel mortgage allowing the mortgagor to sell the mortgaged personalty is valid and constitutes the mortgagor the agent of the mortgagee for the purpose of sale.  5 Rul. Cas. Law, sec. 79, p. 444.  (3)  The mortgagee, by consenting that the mortgagor may sell the mortgaged personalty, waives his lien and has no rights against the purchaser.  5 Rul. Cas. Law, p. 445; 11 C. J. sec. 339, p. 624; De Witt v. Sipfon, 211 S. W. 719.  (4)  Where the clause in the mortgage authorizing the mortgagor to sell or otherwise dispose of the mortgaged chattels is conditional, the purchaser is not responsible for the non-performance of the conditions, and if he purchased in good faith, takes perfect title to the property as against the mortgagee.  11 C. J. 625; 1 Jones on Mortgages (7 Ed.), sec. 608, p. 989; Darst v. Bates, 95 Ill. 493.  (5)  The words "dispose of" in a mortgage have a very broad meaning, even broader than the word "sell" as the selling of property is only one way of disposing of it, hence the words "dispose of" are always held to include the power to sell. 3 Words and Phrases, pp. 2117, 2118; 2 Words and Phrases (2 Ser.) pp. 80, 81; Ironside v. Ironside, 130 N. W. 414; Pearre v. Hawkins, 62 Tex. 434; Williams v. Veach, 17 Ohio, 171, 181; Gould v. Head, 41 Fed. 240; Rogers v. Goodwin, 2 Mass. 475; Appeal of Waddell, 84 Pa. 90; Burr v. Boyer, 2 Neb. 265; In re Hesdra's Estate, 20 N. Y. Supp. 79; Cook v. Burnham, 44 Pa. 447.  (6) Irrespective of the power of sale, a mortgagee in possession has such an interest in the mortgaged chattels, that he can pass a qualified title thereto, and the pur-

297 Mo.—34

chaser is not liable in conversion. Martin v. Lewinski, 66 N. Y. Supp. 995; Dawes v. Rosenbaum, 179 Ill. 112.

SMALL, C.—I. Trover for conversion of two Alice Chalmers electrical machines and other apparatus and connection used therewith.

At the close of the testimony for the plaintiff, the court indicated that it would instruct the jury that under the law and the evidence the plaintiff was not entitled to recover. Thereupon plaintiff took a nonsuit with leave to file motion to set the nonsuit aside, which being overruled, the plaintiff brought the case here by appeal.

The evidence showed that the plaintiff, St Louis Union Trust Company, was the trustee in a deed of trust dated February 5, 1917, made by the Missouri Plate Glass Company to the plaintiff as trustee, to secure the payment of certain promissory notes aggregating $225,000 with interest thereon in favor of the St. Louis Plate Glass Company. Said deed of trust conveyed a tract of ground in St. Louis County "containing twenty acres, strict measure, together with all and singular the buildings, structures, engines, machinery, fixtures, appliances and tools on or about the said real property, located in the County of St. Louis, and the machinery and certain motors now located at No. 1007 Morgan Street in the City of St. Louis, Missouri. And being the same property covered by and included in the conveyance of even date from the party of the third part to the party of the first part. And the possession of the said described property now delivered unto the party of the second part [plaintiff] and to its successor or successors—in trust however for the following purposes: [Notes secured are then described]. . . . Until the first party [Missouri Plate Glass Company] shall have made default in the payment of the principal or interest on any of said notes, or shall have made default in the performance of the covenants, or any of them, herein to be kept and performed by the party of the first part, it shall have

the possession, use, enjoyment and control of all of the property covered by this indenture, and shall receive the rents, issues, income and profits thereof, with the right at all times to alter, change, add to, repair, dispose of and replace any and all machinery, engines, fixtures, appliances, tools and motors, provided only that the security of the within indenture shall not thereby be in any wise reduced or impaired.'' If any of the notes or interest thereon was not paid when due, or in case of default in due fulfillment of any covenants made by the first party, then the trustee was authorized to sell the property at public vendue at the east front door of the Court House in the city of Clayton, in said St. Louis County, and apply the proceeds in payment of the notes and interest and costs of foreclosure.

Plaintiff's evidence further showed that just prior to the time of the execution of this deed of trust, the St. Louis Plate Glass Company, which owned and once operated the property as a glass factory, sold it to the Missouri Plate Glass Company, together with four or five-hundred acres of farming land nearby. The purchase price of the whole property was $400,000, of which $50,000 was paid in cash and notes were given for the balance, of which $125,000 of said notes were secured by deed of trust on the farm lands, and $225,000 by deed of trust on the twenty acres, buildings and machinery constituting the old glass factory, and being the deed of trust hereinbefore mentioned.

Prior to the purchase of the property by the Missouri Company, about a year and a-half or two years, the glass factory and the buildings and machinery in it, including the electrical machinery sued for, had gone through two floods. After the Missouri Company had acquired the property, it went through the process of drying out the motors and machinery all through the plant. A fire had occurred also prior to the purchase which burned down the main polishing and grinding building, which was about seven-hundred and twenty-five feet long, wherein was contained the most valuable

machinery of the plant, as far as finishing glass was concerned; this building had all burned down and the roof had caved in. The water had been all over the property and covered the electrical appliances three or four feet deep. After the Missouri Company purchased it, it was necessary to tear all machinery apart and clean the mud out and dry the motors. At that time, the plant was impossible of operation, and had been idle a year and a half or two years. The property had all been exposed, but the other machinery in the other buildings was under cover, and it only deteriorated, like any machinery would, from rust forming over it.

"Q. Taking the proposition, as a whole, was something like a junk pile, wasn't it, when you got there? A. That is what we ran up against when we financed it. . . . It was necessary to rebuild the premises, take all the machinery apart and replace it; to replace castings and pieces of the machinery that were broken, and take apart the large revolving tables, because some of them had warped and had to be fixed. Also to take much electrical equipment apart and clean and dry it. There had been a wind storm which caved in the roofs, and it was necessary to re-erect the stack, and the stokers were all burned out, and it was necessary to almost rebuild the boiler plant."

After the electrical machines sued for were cleaned and dried out, they were in a usable but not satisfactory condition. It was exceedingly expensive to operate them in the condition they were in.

About four months after the deed of trust was given to the plaintiff, the Missouri Company sold or traded the two electrical machines sued for to the defendant, MacGovern & Company, Inc., receiving $10,000 in cash and a 150 kilowatt motor generator set, which was valued at $5,000. The motor generator thus received in exchange was placed in its plant by the Missouri Company and its use reduced their operating expense.

At the time the sale and exchange was made with the defendant, MacGovern & Company, no default had been

made in any condition of the mortgage, but $25,000 had been paid on the principal prior to that time; no interest was due until August following, when it was also paid. But default did occur in payments due about October 5, 1917.

The motor generator received in exchange was adapted to the uses of the plant. "Q. And this $10,000, that went into the funds that you used to make these changes and alterations and improvements there? A. Yes, sir."

MacGovern & Company was not told anything about there being a mortgage on the electrical engines they received. The Missouri Company was in possession of the property and machinery sued for until after October, 1917. It received no other engine to replace the machines sold to MacGovern & Company. "Q. The only machinery that you received in the way of replacement for all those sold was this smaller one, this 150 kilowatt motor generator set? A. Well now, you speak about that replacement; I would't consider it a matter of replacement. I was changing my plant to operate in the most efficient manner."

The deed of trust to the plaintiff, as trustee, was foreclosed November 26, 1917, leaving $55,000 still due on the notes, after applying the $150,000 for which the property was sold. The electrical engines sued for were delivered to MacGovern & Company at the time of the sale to it and were not sold when the deed of trust was foreclosed.

The foregoing is the substance of the evidence.

II. We think the provisions of the deed of trust shown in evidence authorized the sale and trade of the two electrical machines in controversy by the mortgagor, the Missouri Plate Glass Company, to the defendant, MacGovern & Company, Inc., for the consideration, to-wit, the $10,000 in cash and the motor generator received therefor. The circumstances under which the mortgage was executed, show that the old glass factory was in a

most dilapidated and almost abandoned condition and that it could not be operated by 'the purchaser, the St. Louis Plate Glass Company, without much repair and improvements which would necessitate the disposal of some of the old machinery on hand and securing other and different machinery. Under such circumstances, the said deed of trust to plaintiff, as trustee, was made and executed and contained the provisions set out in the statement of the case, and among others, that until the first party made default in payment of the principal or interest on the note or in performance of any covenant to be kept by it "it shall have the possession, use and control of all of the property covered by this indenture, . . . with the right at all times to alter, change, add to, repair, dispose of and replace any and all machinery, engines, fixtures, appliances, tools and motors, provided *only* that the security of the within indenture shall not thereby be in any wise reduced or impaired."

The cardinal rule for the construction of all written instruments is to ascertain the intention of the parties as shown by the terms of the instrument, and if there is any want of clearness in the language used the circumstances surrounding the parties at the time the instrument is made may be taken into consideration, in order to place the court as near as may be in their situation and view their instrument in the light they viewed it. When so viewed, we have no doubt, that the words "dispose of" in the foregoing quotation from the deed of trust were used in a broad sence, so as to enable the mortgagor to either sell or trade the two electrical machines in question or any part of the machinery in this dilapidated plant covered by the deed of trust to enable the mortgagor to alter, change, add to, repair or replace any such machinery, etc., embraced within the mortgage, "provided *only* that the security of the within indenture shall not thereby be in any wise reduced or impaired."

The evidence shows that not only the motor generator received in exchange was added, but the $10,000 in cash was used in restoring and improving the dilapi-

---

---

dated plant. Therefore, the security "of the indenture" was not only not reduced nor impaired, but increased and improved by the sale and exchange made with the defendant company.

It is a general rule that the words "dispose of" have a broader meaning than the word "sell," and include the power to exchange and sell unless restricted by the context or circumstances, which cannot be soundly asserted in the case before us. [3 Words and Phrases, pp. 2117 and 2118; 2 Words and Phrases (2d Series), pp. 80 and 81; Ironside v. Ironside, 150 Iowa, 628, 130 N. W. 414, 416; Pearre & Co. v. Hawkins, 62 Tex. 434, 437; Whitfield v. Thompson, 38 So. 113-117; Williams, Lessee v. Veach, 17 Ohio, 171, 181; Gould v. Head, 41 Fed. 240, 245; Rogers v. Goodwin, 2 Mass. 475, 477.; Noyes v. Lane, 45 N.W. 327, 328; Appeal of Waddell, 84 Pa. St. 90, 96; Burr v. Boyer, 2 Neb. 265, 267; In re Hesdra's Estate, 20 N. Y. Supp. 79, 80.]

Several other contentions are urged by the respondent why the judgment below was right, but their consideration is not necessary.

The case was properly decided by the lower court and should be affirmed. It is accordingly so ordered.

*Brown* and *Lindsay, CC.,* not sitting.

PER CURIAM:—The foregoing opinion by SMALL, C., is adopted as the opinion of the court.. All of the judges concur.