FRANK COX v. HOME INSURANCE COMPANY OF NEW YORK, Appellant.
—52 S. W. (2d) 872.

Division One, September 3, 1932.

*E. L. Snider* and *Farrington & Curtis* for appellant.

*D. S. Mayhew* for respondent.

STURGIS, C.—This is a suit on a policy of cyclone and windstorm insurance issued by defendant, in which suit the plaintiff recovered damages for the destruction of his barn in the amount of $1,450 and for injury to his dwelling house in the amount of $150 caused by a violent windstorm. The policy on the barn is for $1,500 and on the dwelling house for $1,350, together with certain amounts on other buildings not injured by the storm. The case was tried by the court as a jury and in fixing the amount of the damage for destruction of the barn the court deducted $50 as the value of the salvage and fixed the amount of damage to the dwelling house at $150. From the judgment for plaintiff for $1,600 rendered at the June term, 1928, of the Barry County Circuit Court, defendant appealed to the Springfield Court of Appeals. That court reversed the judgment of the trial court and remanded the case, but one of the judges dissented, and deeming the majority opinion to be in conflict with the decision of this court in the case of Wilson Company v. Hartford Fire Ins. Co., 300 Mo. 1, 254 S. W. 266, the case has been certified to this court.

The decision of the Court of Appeals, including both the majority and dissenting opinions, is reported in Cox v. Home Insurance Co., 19 S. W. (2d) 297, where a fuller statement of the facts and issues will be found and need not be repeated here. The case is here for review the same as if the appeal had been to this court in the first instance, but it will suffice to say, without copying same, that on

reading the record and briefs, we approve and adopt the rulings of the Court of Appeals except on the one point on which the judges of that court differed.

The point for our consideration calls for the construction, as applied to the facts here, of the clause of the policy sued on which reads:

"In case there shall be any other insurance against tornado, windstorm or cyclone on the property herein named, whether valid or not, the assured shall be entitled to recover of this company no greater proportion than the sum herein named bears to the whole amount of insurance."

The present policy was issued on May 26, 1927, and the loss occurred on July 16, 1927. The Court of Appeals properly held, and we are holding, that this policy was a valid and existing policy at that date. Defendant's contention is that at the time of the loss there was other insurance against tornado and windstorm on this same property and that under the provisions of its policy just quoted, it is liable for only its *pro rata* share of the loss, regardless of plaintiff's ability to recover judgment against the other company.

The facts in regard to there being other cyclone insurance on this same property so as to limit defendant's liability to only its *pro rata* share of the loss, are that in April, 1925, plaintiff had taken out a cyclone and windstorm policy in the Springfield Fire & Marine Insurance Company, which we will call the Springfield Company, on this same property and in the same amounts as the present policy. That was a five-year policy and had it been kept in force by payment of premium, would have been valid at the time of this loss. One year's premium was paid in advance, keeping it in force till April 1, 1926, and plaintiff gave his note, payable in installments, for the balance of the premium, one installment being due April 1st of each year, and when paid kept the insurance in force for another year. As to payment of premium, that policy contained this provision:

"But it is expressly agreed that this Company shall not be liable for any loss or damage that may occur to the property herein mentioned while any promissory note or obligation, or part thereof, given for the premium remains past due and unpaid. When said premium note or obligation is paid this insurance shall again attach from the date of receipt of such payment by the Manager."

That policy also contained this clause:

"If the assured, without written consent hereon, has now, or shall hereafter procure any other contract of insurance, whether valid or not, on any of said property . . . then in each and every one of the above cases this policy shall be null and void."

It is conceded that plaintiff did not pay the premium installment which came due April 1, 1927, and that the Springfield policy then lapsed. There was a mortgage or deed of trust on this property held

by the Deming Investment Company and a mortgage clause in favor of the mortgagee was attached and the policy was held by the mortgagee. When plaintiff defaulted in the payment of the premium installment, the Springfield Company notified both the mortgagee and the plaintiff and his agent of that fact. ⸰Plaintiff's agent, having the matter in charge, for some cause decided to take out a new policy rather than revive the lapsed policy in the Springfield Company, and applied for and took out the policy now sued on. The lapsed policy in the Springfield Company was a combined fire and cyclone policy, while the present policy is for cyclone insurance only and with a much lower rate of premium. There is nothing whatever in the record to indicate that plaintiff intended to keep both policies in force. He considered it purely optional with him to continue the Springfield policy in force by paying the annual installments of premium as they came due or to let the policy lapse. It is true, under the law, that the Springfield Company might have forced plaintiff to pay the premium installment after default and thus might have revived such policy, but nothing of that kind was attempted. When the loss occurred, there was and now is no chance whatever for plaintiff to recover on the Springfield policy. Defendant argues that the Springfield policy was at the time of the loss merely a lapsed policy and not a cancelled policy, but however that may be it was a dead policy, and if plaintiff is compelled to prorate his loss between the two companies, it merely means that he can collect only half his loss.

The policy in the Springfield Company was at the time of the loss void and non-enforceable for another reason than the failure to pay the installment of premium when due. That policy, as we have noted, contained a provision that same would become void if the assured obtained, without its consent, which was not given, any other contract of insurance, whether valid or not, on the same property; so that the issuance of the policy now sued on *ipso facto* rendered the Springfield policy null and void, and it was not merely a lapsed policy subject to being revived by paying the past due premium, if that fact would make any difference.

The plaintiff in his application for the policy sued on stated that there was no other insurance on the property in question. He warranted this statement to be true and agreed that the insurance to be issued should be predicated on such statement. If the abated policy in the Springfield Company, made void by the issuance of this policy, constituted "insurance" as that term is used in the present policy, then the plaintiff made a false representation in this respect. However, the defendant does not claim that there was such a false representation in this respect as to render the present policy void. It merely claims that it effects a *pro rata* reduction of the loss.

The general rule, though the decisions are conflicting, seems to be that in order to constitute a false representation as to there not being other or existing insurance on the same property, such other or existing insurance must be valid and enforceable. In 26 Corpus Juris, 189, section 230, this is said: "If the prior policy is wholly invalid before the issuance of the policy in suit, it cannot be regarded as constituting an insurance which must be disclosed, in the absence of a specific requirement as to the disclosure of insurance whether valid or not; although it has been held that if the policy is valid on its face, it should be disclosed. . . . A provision in the policy requiring all the insurance 'whether valid or not' to be disclosed is valid, and a failure to mention a former policy apparently valid on its face, but in fact void, will vitiate the insurance. Some authorities, however, have held that notwithstanding such provisions the existence of a void policy will not defeat a subsequent policy." Cases are cited sustaining all these propositions.

So, also, where there is a stipulation in the policy against other insurance, existing or subsequent, or limiting the amount of such other insurance, without the consent of the insurer, the policy is not made void unless such existing or subsequent policy is a valid and enforceable one at the time of the loss. On this question also the authorities are much in conflict. As stated in 26 Corpus Juris, page 261, section 326, "While some authorities have held that a condition against additional insurance is violated by procuring a subsequent policy, even though such policy is void, nevertheless it is the general rule that, to avoid a policy on account of additional insurance, the additional insurance must be valid and enforceable. If it is void there has never actually been any additional insurance, and the prior policy is unaffected. But the condition against additional insurance is generally regarded as violated if the second policy is merely voidable, or requires extrinsic evidence to establish its invalidity; although some authorities have held that a voidable policy does not violate such condition any more than one which is absolutely void. . . . Insurers have, in view of this conflict, inserted in their uniform policies a provision that the forfeiture is to occur whether the additional insurance be 'valid or otherwise.' In general, such clause is held as reasonable and valid; although authorities are not wanting for the doctrine that even under this form of the clause the other insurance must be valid in order to effect a forfeiture of the policy."

It is ruled in this State that where a policy contains a provision making it void in case of other or additional insurance beyond a fixed amount, such other or additional insurance must be valid and enforceable at the time of the loss. [Obermeyer. v. Globe In-

surance Co., 43 Mo. 573, 577; Dahlberg v. St. Louis Mutual Ins. Co., 6 Mo. App. 121.]

In the Obermeyer case the policy prohibited other insurance above a fixed amount but did not use the term ''whether valid or invalid.'' The court there said: ''The general doctrine that a previous or subsequent insurance without notice, in a policy requiring such notice, and with a clause of forfeiture like that of the defendant, discharges the obligation of the company that insures, is well settled and universally recognized. . . . But there are some apparent, though not real, exceptions to this doctrine. The contract is to be enforced according to its spirit, not its letter merely. Thus it is well settled, though perhaps not with the same unanimity, that if the second policy, against which the contract stipulates, is itself a void one, or one that cannot be enforced, it shall not avoid the first, notwithstanding the clause of forfeiture. . . . Thus it is seen that this covenant is not construed literally, for, if it were, any forbidden policy, whether it could be enforced or not, would release the one containing the prohibition. The construction given such covenants fully accords with their object—to take away from the assured any motive to destroy his property or to be lax in saving it.''

■■ As we have stated, the defendant here does not claim that its policy was made void by reason of misrepresentation as to there being no other insurance on the property or by reason of other insurance, valid or invalid, being therein prohibited. The defendant's claim is that the Springfield policy, though invalid and unenforceable at the time when the present policy was issued and when the loss occurred, was nevertheless ''other insurance, valid or invalid,'' within the meaning of the *pro rata* clause reducing the amount of its liability. On this precise point the authorities are in hopeless conflict. Quoting again from 26 Corpus Juris, 362, under the head of Prorating Liability, section 454 says: ''A general provision for prorating applies only in regard to other valid and enforceable insurance, and under some statutes the policy cannot contain a contrary stipulation. But in the absence of a statutory provision to the contrary, in order to obviate the difficulty arising out of a determination as to the validity of other insurance, it is usual to insert a stipulation by which the insurer is liable only for its *pro rata* share, whether the other insurance is valid or not; under such a stipulation the insured cannot take advantage of the invalidity of other policies which have attached or might have attached to the property.'' All these propositions are well supported by authorities there cited.

In 14 Ruling Case Law, page 1310, section 383, this statement is made: ''A provision that the insurer shall be liable only for its *pro rata* share of the entire insurance on the property, whether valid

or invalid, applies even in cases where existing policies are by their terms rendered void, by the issuance of the policy containing the clause, so that from the date of the latter policy it is the only existing insurance on the property. Such a provision applies to all unenforceable policies.'' This statement is based on Webb v. Concordia Fire Ins. Co. (Mich.), 36 L. R. A. (N. S.) 350, which holds that an express provision for prorating the loss, whether the other policy was valid or invalid, applies though such other policy was made invalid by the issuance of the policy sued on, and the annotation cites other cases to the same effect. In a later annotation in 56 American Law Reports, page 473, the law is summed up in this statement: ''But where the *pro rata* clause expressly provides that other insurance shall be regarded as coinsurance, whether 'valid or not,' such a provision will, in general, be effective to compel a prorating with other insurance, although such insurance be void.'' As supporting this cases are cited from Michigan, Mississippi, New York, Pennsylvania, South Carolina, Texas, and Canada. However, cases are cited to the contrary. In the New York case of Galantschik v. Globe F. Ins. Co., 31 N. Y. Supp. 32, where a policy provided for prorating with other insurance, ''whether valid or not, or by solvent or insolvent insurers,'' and the defendant insurance company claimed that its policy should be prorated with other insurance which had become void because of a failure to notify the insurer of the change in ownership, on the ground that the other insurance was invalid and voidable, and not absolutely void, it was held that the other insurance had become absolutely void, and that a policy becoming void by its own terms constituted no insurance upon the premises, and ceased to affect the question of liability of another company under the clause providing for proportionate payment.

In Marshall v. Insurance Co., 28 W. N. Cas. (Pa.) 283, it is held that where an insurance policy becomes absolutely void on the taking out of insurance in another company, it does not constitute other insurance within the meaning of a clause in other policies providing for an apportionment of the loss among all the companies insuring the property, although such other policies provided that the apportionment should be made whether the insurance was valid or not. To the same effect is the late Texas case of Columbian National Fire Ins. Co. v. Dixie-Co-op. Mail Order House, 261 S. W. 174, affirmed in 276 S. W. 219, where it is held that a provision stipulating for a *pro rata* payment of loss in case of other insurance, ''whether valid or not, or by solvent or insolvent insurers,'' contained in a policy of fire insurance does not entitle the insurer to prorate its policy with one which had been cancelled sometime before the loss occurred, although at the time of the adjustment of the loss the cancelled policy was considered as insurance. [See, also, Meyers

v. German Ins. Co., 101 Neb. 855, 166 N. W. 247; Gurnett v. Atlas Mutual Ins. Co., 124 Iowa, 547, 100 N. W. 542.]

In 7 Couch on Insurance, section 1847, page 6158, where a full citation of cases on this point is found, the law is stated thus: "In many instances, the *pro rata* clause expressly includes invalid or void and uncollectible policies of other insurers, and where such is the case the provision will, as a general rule, be held effective to compel a prorating with other insurance, even though it be voidable, void, or uncollectible because of insolvency, etc. In fact, such clauses appear in standard forms, thus indicating governmental approval, and evidencing a legislative purpose that all policies in existence at the time of the loss should be taken into account, whether void or valid. It also has been said that the plain purpose of such provision is to protect the company against the necessity of contesting with the insured any question of the validity or invalidity of other existing policies. Again, if the policy contained a *pro rata* clause, 'without reference to the solvency or liability of other insurers,' it is held that though the other insurers become insolvent, or though the policy be avoided, yet the other insurance will be considered as reducing the liability of the company issuing the policy which contained such a condition." This authority, however, takes note of cases to the contrary, including the Missouri case of Parks v. Hartford Ins. Co., 100 Mo. 373, 12 S. W. 1058, of which it says: "And the Missouri Supreme Court has declared, in effect, that a provision that the insured shall not be entitled to recover any greater proportion of loss or damage than the amount of the policy bears to the total insurance on property, 'without reference to the solvency or liability of other insurers,' cannot 'fairly and reasonably be said to include contracts of supposed insurance, which, for any sufficient cause, fail ever to become operative; those words refer to valid insurance which, though in force at the time of the loss, may not constitute a legal liability, because of some breach of the terms of the policy, or otherwise.' "

A reading of this Parks case shows that the *pro rata* payment clause is not different in meaning than the one now under consideration. The facts in that case are that the insured took out a second policy under the information and belief that the first policy had been cancelled, and so stated and represented in taking out the second policy that the property was not insured. This representation was not true as the other policy had not been cancelled, but such representation rendered the second policy, under its terms, void. The insured was allowed to recover on the first policy without any prorating, the court saying: "The kind of insurance contemplated by the policy in suit, referring to the clause for the apportionment of the loss, is valid insurance, or such as has, at least, original validity. The pol-

icy in the East Texas Company was not of that sort. It was obtained under the mistaken impression that the policy sued on here and others, had been cancelled, and the insured so represented. This was sufficient to avoid that policy from the beginning, and that company's refusal to pay it appears just, on the facts shown. The words in this policy 'without reference to the solvency or liability of other insurers,' cannot fairly and reasonably be said to include contracts of supposed insurance which, for any sufficient cause, fail ever to become operative. *Those words refer to valid insurance which, though in force at the time of the loss, may not constitute legal liability because of some breach of the terms of the policy, or otherwise.*" This is a clear holding that the term "other insurance," whether valid or invalid, means other insurance in force at the time of the loss.

As to the case of Wilson Co. v. Hartford Ins. Co., 300 Mo. 1, 254 S. W. 266, the majority of the Court of Appeals held that the exact point being considered as to the *pro rata* liability was not involved or decided, thought the question was "similar." The dissenting judge held such opinion to be a binding decision. That case is somewhat difficult to understand. The policy there sued on contained a clause similar to the *pro rata* clause here considered limiting liability to a *pro rata* payment of the loss based on the whole amount of insurance "whether valid or invalid;" and also a clause declaring such policy void in the event of other insurance "whether valid or invalid." The defendant company there defended on the ground that plaintiff had another policy in the Globe & Rutgers Fire Insurance Company covering the same property. As to the prohibition in the policy sued on against other insurance, the court held that another clause in the policy sued on clearly contemplated and permitted other insurance, so that "under these terms of the policies therefor, and the facts proven and admitted, the question which seeks solution is not the *validity* or *invalidity* of the appellant's policies, but the *extent of their liability,* provided, of course, the Globe & Rutgers policy is to be construed as in anywise affecting the obligation imposed by the appellant's policies." The court then held that the policy sued on constituted what is termed "specific insurance," and that the other policy of the Globe & Rutgers Company constituted what is termed "floating or surplus insurance," the legal effect being that the last named policy does not "become operative until the prior (or other) insurance has been exhausted;" that is, the floating policy "attaches only when the specific policy ceases to cover the risk," and consequently the two policies were not concurrent insurance on the same property. The court then said: "With this limitation blazoned on its face, the Globe & Rutgers policy could not tend to increase the risk of the appellant (defendant) or improperly excite the cupidity of the insured. It cannot be said, there-

fore, to constitute such 'other insurance whether valid or invalid' as is held under different conditions to render nugatory the existing insurance issued by the appellant. [Citing Obermeyer v. Globe Mutual Ins. Co., 43 Mo. 1. c. 577.] Under the ruling, therefore, in the Obermeyer case, to constitute a successful defense in an action on an insurance policy, it should appear that the policy relied upon to avoid the one containing the condition of forfeiture was in existence, and enforceable at the time of the loss. It may be said in the light of the many cases that to render an existing policy void, the additional insurance must be valid and enforceable. [26 C. J. 261, note 43.] These conditions need not be co-existent. Although it may be conceded that the Globe & Rutgers policy is valid, it is unenforceable; this condition of *innocuous inertia* utterly destroys its power to affect appellant's policies. There is a rule of construction especially applicable to contracts of insurance that stipulations in policies in the nature of warranties or conditions are to be reasonably construed with reference to the subject-matter and not captiously or literally.''

It is true that the authorities cited in that case deal with the effect of other insurance, valid or invalid, on policies prohibiting other insurance under penalty of forfeiture, rather than their effect on policies providing for prorating the loss with other policies, valid or invalid; but evidently the court applied the same principle of law to each, to-wit, that in order for the other policy to have the effect of either forfeiting the policy sued on or reducing the liability to a proportionate amount of the loss, such other policy must be valid and enforceable at the time of the loss. Our courts have, therefore, rejected the doctrine of "color of insurance" as applied to "other insurance, valid or invalid," having the effect of either forfeiting the policy sued on or reducing the amount of liability. While there is much authority to the contrary, we are satisfied with the justness and fairness of our ruling on this point.

It is no injustice to an insurance company to have to pay, in case of loss, the amount of insurance for which it has collected premium, unless there is some valid reason to the contrary. Of course, the insured should not be allowed to collect more than his real loss, which, under our statute, may be fixed by the contract, though not so here, and where there is more than one valid and existing policy covering the same loss, such loss should be prorated. There is no good reason, however, why mere colorable insurance, invalid in fact, should reduce the amount covered by a valid policy. To have such effect, such other policy must at least be enforceable at the time the policy sued on was issued. It may also be observed that the prime object in enforcing provisions in insurance policies such as we have been considering is to prevent over-insurance, a

condition which greatly increases the loss hazard. This consideration, however, does not apply to cyclone or windstorm insurance. Over-insurance may bring about loss by fire, but hardly so by wind.

These considerations lead to an affirmance of the judgment of the trial court and it is so ordered. *Ferguson* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur.