RUTH KOSSMEHL, RESPONDENT, v. MILLER NATIONAL INSURANCE COMPANY, CHICAGO, ILLINOIS, A CORPORATION, APPELLANT.—185 S. W. (2d) 293.

St. Louis Court of Appeals. Opinion filed February 6, 1945.

672

*Moser, Marsalek & Dearing* for appellant.

*Willson, Cunningham & McClellan* for respondent.

674

ANDERSON, J.—This is a suit on an insurance policy issued by the Millers National Insurance Company, which insured plaintiff against the loss of an emerald ring. The petition, which was conventional in form, alleged the loss of the ring, and prayed judgment in the sum of $750, plus an attorney's fee and a penalty under the vexatious refusal to pay statute.

Defendant's answer consisted of a general denial and affirmative defenses. It averred that by the terms of the policy the assured warranted that no other insurance was or would be carried on the property insured except as might be endorsed on said policy, and it alleged that plaintiff had violated this warranty. It also averred that the policy provided that no loss was to be paid thereunder if the insured collected her loss from others. It further alleged that plaintiff had collected her loss from the Dubuque Fire & Marine Insurance Co., had assigned her claim against defendant to said Dubuque Fire & Marine Insurance Company, and had agreed with said Dubuque Fire & Marine Insurance Company to permit it to institute this action in her name, although she had no interest in said cause of action and was not the real party in interest herein.

The policy in suit was issued on October 30, 1937, by the Millers National Insurance Company, and by its terms insured both plaintiff and her husband, Oscar H. Kossmehl, for a period of three years. The husband paid the premium. The ring in question was one of several items insured under the policy.

Sometime after securing this policy, plaintiff and Mr. Kossmehl were divorced. Thereafter, being under the impression that her former

husband had cancelled the above policy, plaintiff, on January 8, 1940, obtained from the Dubuque Fire & Marine Insurance Company its inland marine floater policy No. IM D 8163, which by its terms also covered the ring in question.

Plaintiff testified that in securing the Dubuque policy she told the agent of the Dubuque Fire & Marine Insurance Company that the policy of the Millers National Insurance Company had been cancelled.

Defendant's policy contained the following provisions:

"7. Warranted by the assured that no other insurance is or will be carried on the property insured hereunder during the term of this policy except as may be endorsed hereon.

. . . . .

### General Conditions

"No loss to be paid hereunder if the assured has collected the same from others."

The Dubuque policy contained the following provisions:

"9. No other insurance is permitted on the property insured hereunder during the term of this Policy except as may be endorsed hereon.

. . . . .

### Conditions

"This entire policy shall be void if the Assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or in case of any fraud or false swearing by the Assured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

There were no endorsements concerning other insurance on either policy.

The undisputed evidence disclosed that plaintiff, on August 3, 1940, while at her summer home in Wisconsin, lost the ring in question; that its value was $1400 at the time of its loss; that following the loss, claims were presented by and on behalf of plaintiff against both insurance companies. The defendant denied all liability for the loss on the ground that the condition against other insurance had been violated. No tender of the premium or any part thereof was made by the Millers National Insurance Company.

The Dubuque Company declined to pay the claim, its adjuster advising plaintiff that its policy was void because of the existence of the Millers National policy. No tender of premium was made at the time of this denial of liability. Thereafter, the Dubuque's representative made demand of defendant for *pro rata* payment under defendant's policy. Defendant refused to comply with this demand, following which the Dubuque Company's representative wrote defendant a letter, in part, as follows:

"You will recall that I have discussed this loss with you on a number of occasions relative to the interest of the Millers National Insurance

Company, whom you represent, and my client, Dubuque Fire and Marine Insurance Company. The denial of liability on your part, as far as the suggestion to *pro rata,* has been referred to my Home Office and they are at this time willing to make a settlement with the assured under a loan agreement and proceed against Millers National."

Following this, a written agreement was entered into between plaintiff and the Dubuque Company, by the terms of which the Dubuque Company advanced the sum of $1200 to plaintiff as a loan, re-payable only to the extent of any net recovery plaintiff might thereafter make from the Millers National Insurance Company, or from any carrier, bailee, or others, on account of the loss of said ring; and plaintiff obligated herself to prosecute the present action, which was to be under the exclusive direction and control of the Dubuque Company and without any pecuniary expense to plaintiff.

The case was tried without a jury. The court found in favor of plaintiff in the sum of $750, plus 10% statutory penalty, plus $148.80 interest on both of said sums from October 3, 1940, making a total of $973.80, and court costs.

By its first assignment of error, appellant contends that the court erred in finding that the policy of insurance issued by the Dubuque Fire & Marine Insurance Company was invalid and unenforceable. The trial court had held, among other things, that the Dubuque policy was not valid enforceable insurance at the time of the loss, and hence was not other insurance, the existence of which would be a breach of the warranty against other insurance contained in defendant's policy. According to the trial court's theory, the Dubuque policy was not valid enforceable insurance because the existence of defendant's policy constituted a breach of its warranty against other insurance.

In challenging the correctness of this ruling, appellant contends that the provision against other insurance in the Dubuque policy is not a warranty, and that though the proscription was breached, the policy was not rendered void or voidable because the policy contained no forfeiture clause.

We do not agree with appellant that said provision of the policy was not a warranty. The policy provided that it was made in consideration of the stipulations contained therein. The stipulation in question provided that "No other insurance is permitted on the property insured hereunder during the term of this Policy except as may be endorsed hereon."

An agreement that there shall be no other insurance is material to the risk as a matter of law. [Dolan v. Missouri Town Mutual Fire Ins. Co., 88 Mo. App. 666.] We cannot view the agreement other than as an express warranty by the insured that no other insurance was or would be carried by her on the property in question, and since

defendant's policy was in full force and effect at the time the Dubuque policy was taken out, the latter policy was voidable for that reason.

Nor do we agree that a breach of the provision would not render the policy voidable because the policy did not provide for a forfeiture for its breach. The doctrine relied upon by appellant, and announced in the cases cited in its brief, should not be applied to conditions precedent to liability.

Since the Dubuque policy was not enforceable at the time of the loss, it was not other insurance which would defeat liability on· defendant's policy. [Cox v. Home Insurance Co., 331 Mo. 10, 52 S. W. (2d) 872; Obermeyer et al. v. Globe Mutual Ins. Co., 43 Mo. 573; Dahlberg v. St. Louis Mut. Fire & Marine Ins. Co., 6 Mo. App. 121.]

Appellant makes the further point that the transaction under which the Dubuque company paid $1200 to plaintiff was not a loan, but was payment to her under the Dubuque policy. Therefore, it is argued, having received satisfaction in full, plaintiff has no cause of action against appellant herein.

The character of the transaction must be determined by ascertaining the intention of the parties. [Luckenbach v. McCahan Sugar Ref. Co., 248 U. S. 139, 63 L. Ed. 170, 39 Sup. Ct. Rep. 53.] And, in determining the meaning of the agreement, it is always permissible for the court to consider the situation of the parties, and the accompanying circumstances at the time of the execution of the contract. [17 C. J. S., Contracts, sec. 321; Restatement of the Law of Contracts, sec. 235; St. Louis Union Trust Co. v. MacGovern & Co., 297 Mo. 527, 249 S. W. 68; North St. Louis Building & Loan Ass'n v. Obert, 169 Mo. 507, 69 S. W. 1044; Velvet Freeze v. Milk Wagon Drivers' and Inside Dairy Employees' Union, Local No. 603 (Mo. App.), 177 S. W. (2d) 644.]

In Restatement of the Law of Contracts, sec. 235, the author comments on the rule as follows:

"Comment on Clause (d):

"e. The court in interpreting words or other acts of the parties puts itself in the position which they occupied at the time the contract was made. In applying the appropriate standard of interpretation even to an agreement that on its face is free from ambiguity it is permissible to consider the situation of the parties and the accompanying circumstances at the time it was entered into—not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning to be given to the agreement."

What then was the situation of the parties at the time the agreement was entered into? Plaintiff, of course, wanted her money, and had made claim against both insurance companies. It is fair to assume that it did not make much difference to her from which company she received satisfaction of her claim. The Dubuque Company felt it had issued a policy which was voidable under its terms, and yet it .

was faced with the risk of being sued under the policy. The defendant company had denied liability under its policy, although it had no legal justification for having done so. Therefore, the Dubuque company denied liability to plaintiff, and after negotiating with plaintiff, succeeded in entering into the agreement.

In our opinion, the evidence contains nothing which would indicate that the Dubuque company, in advancing the $1200, intended thereby to waive any defense which it had, or that it considered such advancement as an unconditional payment of its liability under the policy. On the contrary, the opposite is shown. The Dubuque company had a strong motive for making a loan to the plaintiff instead of paying off on its policy. If it had paid under the policy, it would have been contended that the burden of the whole loss was upon the Dubuque company, without any right to contribution from the defendant, for if the Dubuque company accepted any liability under its policy, it would have been faced with the argument that that was conclusive proof that defendant's policy was void for breach of the warranty in its policy against other insurance. On the other hand, a loan to plaintiff would put her in funds, and forestall litigation with her. This, of course, shows a motive of self-interest, but the pursuit of self-interest is perfectly legitimate in the business and commercial world. It was perfectly proper for the Dubuque company to make whatever arrangement it could to protect it from the expense of litigation on its policy, which it at all times considered non-enforceable, and if this could be accomplished only by making a loan re-payable only out of proceeds collected from the underwriter actually liable for the loss, we see no objection to it.

We find nothing in the record from which it could be inferred that plaintiff regarded the transaction other than what it purported to be. The matter was explained to her, and she fully understood that she was getting the $1200 under the agreement as a loan.

Loan agreements of this character have been approved time and again in cases where carriers and warehousemen who have been sued have sought to avail themselves of insurance carried by shippers and bailors. The leading case is Luckenbach v. McCahan Sugar Ref. Co., 248 U. S. 139, 63 L. Ed. 170, 39 Sup. Ct. Rep. 53. In that case plaintiff brought suit for damages for negligence against the charterer of a vessel, for the loss of goods alleged to have been caused by the unseaworthiness of the ship. The bill of lading under which the goods were shipped contained a clause giving the carrier the benefit of any insurance which the shipper might have effected upon the goods to the extent of the carrier's liability to the shipper. The shipper carried policies which provided that the insurer should be free from any liability for merchandise in the possession of any carrier liable for any loss or damage thereto, and for merchandise shipped under a bill of lading containing a stipulation that the carrier should have the

benefit of any insurance thereon. After the loss, the insurance companies paid to the shipper a sum equal in amount to the loss, and took from the shipper a loan agreement similar to the one in the case at bar. The carrier contended that the plaintiff had been paid his loss by the insurance companies, while the plaintiff contended that the money was received as a loan, and that therefore the carrier was not relieved of its liability. Mr. Justice BRANDEIS, after stating that whether the transfer of money should operate as a payment was ordinarily to be determined by the intention of the parties, held that in this particular case the money paid by the insurance companies should be regarded as a loan, and not as payment of the loss. The reason for giving effect to the agreement as a loan is stated as follows:

"The insurer would, in no event, be liable to the shipper, if the carrier was liable. In case the insurer should refuse to pay until the shipper had established that recovery against the carrier was not possible, prompt settlement for loss . . . would be defeated. If, on the other hand, the insurers should settle the loss, before the question of the carrier's liability for loss had been determined, the insurer would lose the benefit of all claims against the carrier, to which it would be subrogated in the absence of a provision to the contrary in the bill of lading, . . . and the carrier would be freed from liability to anyone. In order that the shipper should not be deprived of the use of money which it was entitled to receive promptly after the loss, either from the carrier or from the insurers, and that the insurer should not lose the right of subrogation, agreements in the following (or similar) form were entered into" . . . (Then follows a form of loan agreement.)

The court further said:

"It is clear that if valid and enforced according to their terms, they accomplish the desired purpose. They supply the shipper promptly with money to the full extent of the indemnity or compensation to which he is entitled on account of the loss; and they preserve to the insurers the claim against the carrier to which, by the general law of insurance, independently of special agreement, they would become subrogated upon payment by them of the loss. . . . The insurer could not have been obliged to pay until the condition of their liability, i.e., non-liability of the carrier, had been established. The shipper could not have been obliged to surrender to the insurers the conduct of the litigation against the carrier until the insurers had paid. In consideration of securing them the right to conduct the litigation, the insurers made the advances. It is creditable to the ingenuity of business men that an arrangement should have been devised which is consonant both with the needs of commerce and the demands of justice."

Our conclusion is that the $1200 payment to plaintiff was not payment of her loss.

Appellant also complains that the court erred in finding and declaring that by failing to make a tender of the unearned premium on its policy, defendant waived its right to disclaim liability because of plaintiff's breach of warranty. In view of our holding that there was no defense of breach of warranty in this case, it becomes unnecessary to pass upon this assignment.

Appellant's final assignment of error is that the court erred in assessing a penalty under the vexatious refusal to pay statute. [Sec. 6040, R. S. Mo. 1939, Mo. R. S. A., sec. 6040.] We must sustain this contention. Defendant had the right to have a judgment of the court as to whether a loan agreement of the kind used in this case would be applied in a case of this character. It was a new question in this State. Where there is a bona-fide dispute either as to a question of fact or a question of law, the statute should not be applied. [Volz v. Travelers Ins. Co. (Mo. App.), 161 S. W. (2d) 985; Rieger v. Mutual Life Ins. Co., 234 Mo. App. 93, 110 S. W. (2d) 878.]

If the plaintiff will within thirty days remit the penalty allowed, and interest on the penalty, the judgment of the court will be reversed and the cause remanded with directions to the circuit court to enter a new judgment in favor of the plaintiff and against the defendant in the sum of $750, with interest at the rate of 6% per annum from October 3, 1940. Failing this, the judgment will be reversed and the cause remanded for new trial. *Hughes, P. J.,* and *McCullen, J.,* concur.